300 Ga. 450
FINAL COPY

S16A1580.  MOSBY v. THE STATE.

BENHAM, JUSTICE.

Appellant Leslie Mosby was convicted of murder and other offenses arising out of the shooting death of Theisen Wynn.[1]  Viewed in the light most favorable to the verdict, the trial evidence showed that at the time of the shooting, Mosby and Pat Burns had been in a romantic relationship for over a year, but the women began having difficulties in their relationship, and Burns moved out and befriended Wynn.  At approximately 5:00 a.m. on November 13, 2012, as Wynn and Burns were driving into a parking space in the parking lot of a suites hotel in Fulton County, Mosby drove up and partially

---

[1]  The crimes occurred on November 13, 2012.  On February 15, 2013, a Fulton County grand jury returned an indictment against appellant charging her with malice murder, felony murder (aggravated assault), felony murder (possession of a firearm by a convicted felon), aggravated assault of victim Theisen Wynn, aggravated assault of Pat Burns, possession of a firearm during the commission of a felony, and possession of a firearm by a convicted felon.  After a jury trial conducted between March 24, 2014 and March 26, 2014, appellant was found guilty on all counts.  The trial court sentenced appellant to serve life in prison for malice murder and 25 consecutive years for the other counts that were not merged or vacated by operation of law.  Appellant filed a timely motion for new trial that was later amended.  After conducting a hearing, the trial court denied the motion for new trial as amended on November 30, 2015.  Appellant filed a timely notice of appeal, and this case was docketed to the September 2016 term of court and was orally argued on October 3, 2016.

blocked Wynn's car. Mosby angrily confronted Burns and Wynn about whether they were involved in a relationship and made threats against Burns. During this confrontation, Mosby pointed a gun toward Burns and fired it. Burns was not struck and ran into the hotel lobby, but more shots were fired, including return fire by Wynn. According to the evidence, Mosby fired a total of four bullets from her gun and Wynn fired a total of eleven. Wynn sustained four bullet wounds in the gun battle and later died during surgery. Mosby was also shot four times, and she fled to a friend's house from which she was transported to a hospital by ambulance. As she was fleeing the scene, Mosby threw away her weapon. In fact, neither gun was recovered. Mosby underwent surgery to treat her wounds, and immediately after she awoke from surgery she was read her rights, informed about why she was being restrained to her hospital bed, and then questioned by an officer who made an audio recording of the interview that was played to the jury.

At trial, Mosby testified that while she and Burns were arguing in the parking lot, she saw Wynn "fumbling" with what she believed to be a gun that he placed in a cloth bag, such as a whiskey bottle bag, and then put in his coat pocket. Mosby stated she pulled her gun and started backing away to her car, and that she fired a warning shot at Burns because she wanted her to

2

back off.  Mosby then heard a shot ring out and realized Wynn was shooting at her through his coat pocket.  Mosby testified she took cover in her car and fired back in self-defense.

1.  Mosby asserted the affirmative defense of self-defense, and points to her own testimony and certain other evidence which she claims supports this defense, including a security surveillance videotape that captured the events in question.  When a defendant effectively raises an affirmative defense such as self-defense the State bears the burden of disproving the asserted defense beyond a reasonable doubt.  *Bennett v. State*, 265 Ga. 38, 39 (1) (453 SE2d 458) (1995).  With respect to the sufficiency of the evidence, Mosby asserts the evidence was insufficient to disprove that she acted in self-defense.  For example, according to the medical examiner's testimony, the victim sustained a muzzle imprint wound to his left thigh, and she explained such a wound would be caused by the muzzle of a weapon being in contact with the body at the time the gun was fired.  Mosby asserts the videotape shows she was never close enough to the victim to cause such a contact wound.  Instead, she argues this wound supports her testimony that the victim reached for a gun in his pocket, and she further argues this explains that the shot she heard, which caused her to start firing back and

3

retreat to her car, was the victim accidentally shooting himself with his own gun as he reached for it. The evidence shows, however, that the victim's fatal wound was sustained from a gunshot to his right groin which severed an artery. Consequently, the State argues that a self-inflicted wound from a muzzle imprint to the victim's left thigh "changes nothing," and, in light of the other evidence, does not support Mosby's claim of justification. Mosby, however, asserts that regardless of the initial "warning shot" she fired toward Burns, once the victim commenced firing his gun she shot back only in self-defense.

The record reflects that the video was played to the jury multiple times as various witnesses testified about what the video portrayed, and was also played at least three times during the jury's deliberations at its request. The parties agree that the speed of the video was slowed down for the jury to view, and possibly that it was played frame by frame. Having reviewed the video recording, we agree with the State that a jury reasonably could have found that Mosby's version of the events was not supported by the video and other evidence. Instead, the video supports the State's assertion, and Mosby's own testimony, that Mosby fired the first shot. Burns testified the altercation started when Mosby verbally threatened Burns, and the video

4

appears to show that Mosby pushed Burns before any shooting began. Burns also testified that Mosby fired the first shot. The security video appears to show a gun muzzle flash from Mosby's weapon as the first evidence of any shot being fired. The video then shows a short gun battle between Mosby and the victim.

When evaluating the sufficiency of the evidence, this Court does not reweigh the evidence or resolve conflicting testimony. Instead, this Court reviews the evidence in a light most favorable to the verdict and defers to the jury's assessment of the weight and credibility of the evidence. See *Anthony v. State*, 298 Ga. 827, 829 (1) (785 SE2d 277) (2016). An aggressor is not entitled to a finding of justification. See OCGA § 16-3-21 (b) (3). Further, the question of whether the circumstances of an alleged confrontation between a defendant and a victim were such as to excite the fears of a reasonable person to believe it was necessary to use deadly force against the victim is an issue for the jury. *Howard v. State*, 298 Ga. 396, 398 (1) (782 SE2d 255) (2016). It is obvious from the verdict that the jury disbelieved Mosby's testimony that she was justified in firing at Wynn, and that the jury relied upon other evidence, including Burns's testimony and the events shown on the videotape, to reach its verdict, as it was entitled to do. See

*Berrian v. State*, 297 Ga. 740, 741-742 (1) (778 SE2d 165) (2015). The evidence was sufficient to authorize a rational trier of fact to find beyond a reasonable doubt that Mosby did not act in self-defense and was not otherwise justified when she shot the victim. See *Slaughter v. State*, 278 Ga. 896 (608 SE2d 227) (2005). We also conclude the evidence was otherwise sufficient to sustain the guilty verdict on all other counts for which Mosby was convicted. See *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979).

2. Mosby asserts she is entitled to a new trial due to ineffective assistance of trial counsel. She argues trial counsel's performance was deficient, and failed to meet an objective standard of reasonable professional judgment, because counsel failed to consult with a crime scene reconstruction or firearms expert prior to trial or to retain such an expert as a witness to challenge the testimony or other evidence relating to the shootout. According to Mosby, an expert's assistance in reviewing the ballistics evidence would have enabled counsel to support Mosby's defense more effectively. Further, Mosby claims counsel's failure to present expert testimony to explain the events seen in the security video rendered counsel's presentation of Mosby's justification defense incompetent. She claims that

6

due to the grainy quality of the video, which was lacking an audio component for the jury to hear when the victim returned fire, it was necessary to present expert testimony to explain the events the video portrayed.

Mosby points to the testimony of a witness presented as a firearms and crime scene reconstruction expert at the motion for new trial hearing. That witness acknowledged that the video shows Mosby fired the first shot, which he referred to as a "warning shot." He testified the video shows the victim had a gun in his hand when he exited his car, and that Mosby continued to fire after the warning shot only after the victim commenced approaching her around the front of Mosby's vehicle. According to this witness, Mosby fired a second shot, this time toward the victim, after which the victim rapidly moved toward Mosby, firing multiple shots into Mosby's car as she backed into the driver's seat before speeding away. Mosby asserts that the autopsy evidence regarding the trajectory of the fatal bullet wound demonstrates this bullet was fired as Mosby was inside her car firing back at the victim, who had pursued her to shoot at her through her car door, but that this argument was not made at trial due to counsel's failure to investigate her defense adequately.

7

First, expert testimony is admissible where the expert's conclusion is beyond the ken of the average layman.[2] See *Bly v. State*, 283 Ga. 453, 458 (2) (660 SE2d 713) (2008). But "where jurors can take the same elements and constituent factors which guide the expert to his conclusions and from them alone make an equally intelligent judgment of their own," then expert opinion testimony is not admissible. (Citation and punctuation omitted.) Id. See also *Sims v. State*, 234 Ga. App. 678, 680-681 (1) (a) (507 SE2d 845) (1998) ("Expert testimony is not necessary when the jurors may make the determination on their own."); *Coleman v. State*, 257 Ga. 313, 314 (1) (357 SE2d 566) (1987) (holding that a detective's conclusions about the victim's and defendant's locations when the victim was shot and whether the victim was holding a knife when shot should have been excluded because the jury could form its own conclusions about these issues from the physical evidence presented at trial). Here, the jury could draw its own conclusions about the events shown on the video, and Mosby failed to show that the testimony of an expert witness with respect to what the expert observed on the video would

___

[2] Although Georgia's new Evidence Code is applicable to the trial of this case, the evidentiary requirements relating to the admissibility of expert opinion testimony in a criminal case under the new Evidence Code (OCGA § 24-7-707) are nearly identical to those that applied under the former Evidence Code (OCGA § 24-9-67). Accordingly, it is appropriate to rely, as we do in this case, on decisions under the old Code. See *Jones v. State*, 299 Ga. 40, 42 (2) n. 2 (785 SE2d 886) (2016).

8

have been admissible or that the jury would have accepted his testimony over what it observed. In fact, in the order denying the motion for new trial, the trial court noted that it "did not necessarily see the same things that [the expert witness] described, most significantly [the victim's] exiting his vehicle with a gun in his right hand," and therefore the court did not give this testimony much credit. Deficient performance of counsel is not shown by trial counsel's failure to present a witness whose testimony would have been inadmissible. Compare *Jones v. State*, 296 Ga. 561, 568 (5) (769 SE2d 307) (2015) ("Deficient performance is not shown by trial counsel's failure to make an objection that lacks merit."). Even if admissible, the jurors could have disregarded the expert's testimony about what he saw in the video if it conflicted with what they saw for themselves; and here the trial court stated that the expert's testimony conflicted with what the court, itself, observed in the video. Regardless of what an expert may have testified that he or she observed on the video recording had an expert been called as a witness, it was for the jury to decide whether Mosby was justified in firing her second shot, this time at the victim, as he walked around the front of her car. See *Howard v. State*, supra, 298 Ga. at 398 (2). Mosby has thus failed to establish

9

counsel's performance was deficient for failure to present this evidence at trial.

Further, the expert witness who testified at the motion for new trial hearing directly contradicted Mosby's testimony in two material details. First, he testified that the victim had a gun in his right hand, down by his side, when he exited his car. Mosby, on the other hand, testified she never saw the victim holding a gun in his hand, but only saw him fumbling with what she believed to be a gun in a bag that he placed in his pocket. The expert witness also testified that the only way to account for the muzzle imprint wound was that the victim may have fired his gun as he fell to the ground toward the end of the shootout. Mosby, however, testified that the victim fired his first shot (after her "warning shot") while attempting to get the gun out of his pocket, and offered this as the explanation for how he must have shot himself with his own gun, since, as shown by the video, she was never close enough to inflict such a wound. She also testified that the only reason she commenced firing back at the victim was that she heard the "muzzled" sound of his first shot. Mosby has failed to establish counsel's performance was deficient for failing to present the testimony of a witness who would have contradicted the defendant's own testimony.

10

Additionally, Mosby asserts trial counsel failed to present the testimony of a witness who could have established that, based upon the video, Mosby could not have inflicted the muzzle wound to the victim's left leg and therefore could have provided testimony to support Mosby's assertion that the victim shot himself accidentally. The trial record reflects, however, that the medical examiner testified that the muzzle wound to the victim's left leg was caused by the gun muzzle making contact with the skin, and reflects that trial counsel cross-examined the medical examiner with respect to this factual assertion. The jury was able to determine for itself whether Mosby was ever close enough to the victim to cause a muzzle contact wound. Further, it is undisputed that this was not the fatal wound.

Finally, Mosby asserts that pre-trial consultation with an expert witness would have assisted counsel in utilizing evidence of the trajectory of the fatal bullet to support her defense and would have helped prepare counsel to cross-examine witnesses concerning the ballistic and other evidence. Even if such pre-trial consultation would have better prepared trial counsel to establish that Mosby fired the fatal shot while leaning into her car attempting to flee from the victim, and even assuming counsel's representation was deficient in this regard, Mosby fails to demonstrate a reasonable probability that the trial

11

result would have been different if trial counsel had made such a consultation and then made this argument to the jury. The undisputed evidence establishes Mosby fired the first shot and was the aggressor who started the gunfight. The State did not dispute that the victim returned fire. The jury was properly instructed, however, that an aggressor is not entitled to a finding of justification. Consequently, Mosby fails to demonstrate a reasonable probability that the trial result would have been different even assuming counsel's performance was deficient in this regard. That Mosby fired the fatal shot while trying to get away from the gunfight she started does not change the analysis regarding the lack of justification of a defendant who was shown to be the aggressor. See OCGA § 16-3-21 (b) (3).

In order to prevail on a claim of ineffective assistance of trial counsel, the defendant must establish both deficient performance of counsel and that, but for the deficiency, a reasonable probability exists that the outcome of the trial would have been different. *Gill v. State*, 295 Ga. 705 (763 SE2d 719) (2014). "'Judicial scrutiny of counsel's performance must be highly deferential.'" *State v. Mobley*, 296 Ga. 876, 877 (770 SE2d 1) (2015) (quoting *Strickland v. Washington*, 466 U. S. 668, 699-690 (III) (A) (104 SCt 2052, 80 LE2d 674) (1984)). With respect to performance of counsel, "[a]

strong presumption exists that counsel's conduct falls within the broad range of professional conduct." (Citation and punctuation omitted.) *Parks v. State*, 300 Ga. 303, 310 (6) (794 SE2d 623) (2016). But, citing *Strickland v. Washington*,[3] and also relying upon this Court's opinion in *Turpin v. Helmeci*,[4] Mosby argues that the presumption in favor of counsel's trial strategy decisions applies only to choices made after a thorough investigation of law and facts. At the motion for new trial hearing in this case trial counsel testified, in essence, that it did not occur to him to retain an expert in firearms or crime scene reconstruction. Counsel testified that, instead, his trial strategy was to emphasize the State's burden of proof and the State's failure to present all the relevant evidence, such as the victim's clothing, that would have shown whether the victim shot his gun from inside his pocket. Nevertheless, where, as here, an appellant fails to show counsel's strategic decision was unreasonable, no error is shown by the trial court's denial of a motion for new trial based on claims of ineffective assistance of counsel. *Parks v. State*, supra, 300 Ga. at 311 (6) (d). Accordingly, Mosby failed to support her assertion that counsel's failure to consult with or present an expert witness at

---

[3] 466 U. S. at 690-691 (III) (A).
[4] 271 Ga. 224, 226 (518 SE2d 887) (1999) ("The right to reasonably effective counsel is violated when 'the omissions charged to trial counsel resulted from inadequate preparation rather than from unwise choices of trial tactics and strategy.'" (Citation omitted.)).

trial to testify about the events shown in the crime scene video demonstrates deficient performance. Further, with respect to counsel's failure to consult an expert with respect to evidence that the fatal wound was inflicted while Mosby was attempting to flee the victim's own gunfire, Mosby failed to prove a reasonable probability exists that the trial result would have been different if not for counsel's deficient performance, if any. The trial court did not err in denying the motion for new trial on the ground of ineffective assistance of counsel.

Judgment affirmed. All the Justices concur.

Decided January 23, 2017.

Murder. Fulton Superior Court. Before Judge Markle.

Jessica A. Seares, T. Natasha Crawford, for appellant.

Paul L. Howard, Jr., District Attorney, Paige Reese Whitaker, Marc A. Mallon, Assistant District Attorneys; Samuel S. Olens, Attorney General, Patricia B. Attaway Burton, Deputy Attonrey General, Paula K. Smith, Senior Assistant Attorney General, Jason M. Rea, Assistant Attorney General, for appellee.