305 Ga. 475
FINAL COPY

S18A1562.  JOHNSON v. THE STATE.

BENHAM, Justice.

Appellant Akeem Johnson appeals his convictions stemming from the shooting death of Jamon Middleton and the aggravated assault of Emory Graham.[1]  On appeal, appellant alleges his trial counsel rendered constitutionally ineffective assistance.  Finding no reversible error, we affirm.

---

[1] The crimes occurred on October 8, 2011.  On November 30, 2011, a Chatham County grand jury indicted appellant on charges of malice murder (Middleton), felony murder (Middleton), two counts of aggravated assault (Middleton, Graham), possession of a firearm during the commission of a crime, and possession of a firearm by a convicted felon.  The charge of possession of a firearm by a convicted felon was bifurcated from the main trial which took place August 25-28, 2014.  At the conclusion of the main trial, the jury returned verdicts of guilty on all counts that were not bifurcated.  The State declined to move forward with the bifurcated trial.  The trial court sentenced appellant to life in prison for malice murder, twenty years to serve concurrently for aggravated assault (Graham), and five years to serve concurrently for possession of a firearm during the commission of a crime.  The felony murder charge was vacated as a matter of law and the aggravated assault (Middleton) charge merged for sentencing purposes.  Appellant moved for a new trial on September 4, 2014, and amended the motion on September 22, 2016.  On January 10, 2017, the trial court held a hearing on the motion for new trial as amended, and denied it on May 31, 2017.  Appellant filed his notice of appeal on June 5, 2017.  Upon receipt of the record, the case was docketed to the August 2018 term of this Court and submitted for a decision to be made on the briefs.

In a light most favorable to upholding the jury's verdicts of guilty, the evidence shows as follows. On the night of October 7, 2011, and into the early morning hours of October 8, appellant, Middleton, and Graham were at a local nightclub. When the nightclub closed, Graham and Middleton, who were riding in a greenish-grey sedan, went to a nearby gas station. Appellant, who was driving a black SUV, also showed up there. Graham testified that as he was sitting in his car waiting on Middleton, who had gone into the gas station store, appellant entered the back seat of the car. Graham testified that appellant expressed anger at Middleton over a $20 debt for "weed." In an effort to defuse the situation, Graham paid appellant the money. Appellant exited Graham's car, returning to his own vehicle. When Middleton returned to the gas station parking lot, he and appellant exchanged some heated words. Eventually, Middleton re-entered Graham's car, and the two men drove away. Appellant followed Graham's car, pulling up alongside it at an intersection a few minutes later. Appellant shot into the passenger side of Graham's vehicle several times, killing Middleton.

Once appellant opened fire, Graham testified he sped away from appellant's vehicle and was en route to a hospital to seek help for Middleton when the police stopped him for speeding. Graham informed the police of

what had just transpired, leading police to commence an investigation. Upon being taken in for questioning, Graham identified appellant as the shooter. Meanwhile, Middleton was transported by ambulance to the hospital. The medical examiner testified Middleton died from a bullet wound to the chest. Police recovered a video recording from the gas station's surveillance system corroborating Graham's description of the activities that took place there minutes before the shooting, as well as recovered video recordings from the City of Savannah's street surveillance system depicting the shooting. These recordings were played for the jury.

1. Appellant does not dispute that the evidence was legally sufficient to sustain his convictions. Nevertheless, we have independently reviewed the record and conclude that the evidence was sufficient to authorize a rational trier of fact to find beyond a reasonable doubt that appellant was guilty of the crimes for which he was convicted. See Jackson v. Virginia, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

2. Appellant contends trial counsel was constitutionally ineffective on the grounds that counsel: had a conflict of interest, gave improper advice regarding a plea offer from the State, and failed to object to the trial court's

charge on possession of a firearm during the commission of a crime.   We now examine each allegation of ineffective assistance in turn.

(a)  Appellant alleges trial counsel had a conflict of interest that rendered him unable to provide effective assistance.

> Included within the constitutional right to counsel is the right to representation that is free from conflicts of interest. In order for appellant to prevail on his claim that his attorney was operating under a conflict of interest that violated his right to counsel, he must show an actual conflict of interest that adversely affected his attorney's performance.

(Citations omitted.) Turner v. State, 273 Ga. 340 (2) (a) (541 SE2d 641) (2001). An actual conflict may exist if counsel's duty of loyalty to his client is in conflict with his duty of loyalty to a third party.  See White v. State, 287 Ga. 713 (4) (a) (699 SE2d 291) (2010) (counsel's loyalties were divided between her client and her employer).  See also Handley v. State, 289 Ga. 786 (2) (c) (716 SE2d 176) (2011) (a conflict of interest may involve a "specific concern" that divides counsel's loyalties).  "Whether a conflict of interest denied a defendant his right to effective counsel is a mixed question of law and fact, and we review the questions of law involved de novo."  (Citation and punctuation omitted.) Barrett v. State, 292 Ga. 160 (2) (733 SE2d 304) (2012).

At the motion for new trial hearing, trial counsel testified that, prior to trial, he and the prosecutor had discussed trial counsel's representing the prosecutor in the prosecutor's divorce. Trial counsel stated that he disclosed this issue to appellant before trial. Trial counsel testified appellant asked him if the potential divorce representation could be used to disqualify the prosecutor from his case, to which trial counsel responded that, since appellant's criminal representation had come up first, he would forgo taking on the divorce case rather than seeking the disqualification of the prosecutor. Trial counsel testified that, upon discussing the matter, appellant stated he was fine with counsel's keeping the divorce case. Trial counsel testified that he was formally retained in the divorce action, and that it was filed after appellant's trial concluded. Trial counsel admitted the trial court was never informed of the matter before or during trial. Appellant, who also testified at the motion for new trial proceedings, denied he was aware of the issue until after his conviction.

Even assuming that a conflict existed, appellant has failed to present any evidence of how counsel's performance was adversely affected by counsel's agreement to represent the prosecutor in a divorce action. See Tolbert v. State, 298 Ga. 147 (2) (d) (780 SE2d 298) (2015) ("The trial court was authorized to

conclude that [appellant] failed to demonstrate that his lawyer's theoretical division of loyalties ripened into an actual conflict of interest that significantly and adversely affected the adequacy of the lawyer's representation of him at trial."). Having failed to carry his burden of proof, appellant's claim of ineffective assistance cannot be sustained.

(b) On appeal, appellant alleges trial counsel advised him that the judge would likely sentence him to the maximum sentence of 20 years to serve[2] if he agreed to plead guilty to voluntary manslaughter.[3] He also alleged that trial counsel advised him that the jury would be instructed on voluntary manslaughter should he elect to go to trial; however, at trial, the trial court refused to give such an instruction. Appellant contends that but for the advice about the voluntary manslaughter instruction, he would have taken the plea.

---

[2] See OCGA § 16-5-2 (b).

[3] The record shows the State offered appellant an open-ended plea to voluntary manslaughter with the recommendation that appellant be sentenced to 20 years, with 14 of the years to be served in prison; however, the trial court had the discretion to sentence appellant to serve more time. At a pretrial hearing, appellant acknowledged to the trial court that he had discussed the plea offer with counsel and stated on the record that he was rejecting it. At the motion for new trial hearing, counsel testified the reason appellant rejected the plea offer was because he was unwilling to take a deal that required serving more than ten years in prison.

In order to prevail on this ordinary claim of ineffective assistance of counsel, appellant must

> prove both that his counsel's performance was professionally deficient and that, but for the unprofessional performance, there is a reasonable probability that the outcome of the proceeding would have been different. See Strickland v. Washington, 466 U. S. 668, 687, 694 (104 SCt 2052, 80 LE2d 674) (1984). We need not review both elements of this test if the appellant fails to prove one of them. See Matthews v. State, 301 Ga. 286, 288 (800 SE2d 533) (2017).

Stripling v. State, 304 Ga. 131 (3) (b) (816 SE2d 663) (2018). When reviewing an ineffective assistance of counsel claim, we will accept the trial court's factual findings and determinations of credibility unless clearly erroneous, but will independently apply legal principles to the facts. See Perdue v. State, 298 Ga. 841 (3) (785 SE2d 291) (2016).

Assuming, without deciding, that counsel was deficient when he allegedly advised appellant that the trial court would definitely charge the jury on voluntary manslaughter, appellant cannot show prejudice — i.e., whether the outcome of the plea process would have been different absent trial counsel's deficient advice. See Gramiak v. Beasley, 304 Ga. 512 (I) (B) (820 SE2d 50) (2018). At the time the State offered the plea, appellant was facing a life sentence for murder, as well as additional years to serve for the aggravated assault of Graham and for the charges related to possession of a

firearm. Even if an instruction on voluntary manslaughter had been given at trial as counsel requested, there was no guarantee and no allegation that trial counsel promised that the jury would return a verdict on a lesser included offense. Thus, by rejecting the plea offer, which guaranteed a single conviction for voluntary manslaughter and zero risk of being convicted of murder and other charges, appellant took a significant risk of being convicted of murder and other charges, whether or not the trial court instructed the jury on voluntary manslaughter. Furthermore, according to trial counsel's testimony, which the trial court implicitly credited, the reason appellant rejected the State's plea offer was because he did not want to agree to any deal that required him to serve more than ten years in prison. Therefore, appellant has failed to show there was a reasonable probability he would have accepted the plea offer but for counsel's advice. Id. at 515. Accordingly, this claim of ineffective assistance lacks merit.

(c) Finally, appellant alleges trial counsel rendered ineffective assistance when he failed to object to the following instruction on possession of a firearm during the commission of a crime:

> Members of the jury, the last offense in the indictment is the offense of possession of a firearm during the commission of a crime. I charge you that a person commits the offense of

possession of a firearm during the commission of a crime when the person has on his person a firearm during the commission of, or any attempt to commit a felony which is any crime involving the person of another. I further charge you that the crimes of murder and aggravated assault are felonies under the laws of this state.

Appellant argues this charge improperly enlarged the scope of his indictment for this crime. We disagree. Count 5 of the indictment for possession of a firearm during the commission of a crime described the conduct at issue as follows: "[Appellant did] have on his person a firearm during the commission of a crime involving another person . . . ." In addition, appellant was indicted, in Counts 1 through 4, for the murder of Middleton and the aggravated assaults of Graham and Middleton by "shooting" at them. The charge as given was consistent with the entirety of the indicted charges for which verdicts of guilty were returned.[4] See also OCGA §§ 16-5-1, 16-5-21, 16-11-106. Accordingly, trial counsel was not deficient for failing to make a meritless objection. See Vergara v. State, 287 Ga. 194 (3) (b) (695 SE2d 215) (2010). Appellant's claims of ineffective assistance cannot be sustained.

Judgment affirmed. All the Justices concur.

---

[4] Appellant also alleges the charge improperly expanded the scope of Count 6 of the indictment. This assertion is inapposite, however, because Count 6 of the indictment concerned possession of a firearm by a convicted felon, a crime for which appellant was not ultimately tried. See supra, n.1 herein.

Decided March 11, 2019.

Murder. Chatham Superior Court. Before Judge Karpf.

Robert L. Persse, for appellant.

Meg E. Heap, District Attorney, Emily C. Puhala, Assistant District Attorney; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Meghan H. Hill, Assistant Attorney General, for appellee.