309 Ga. 729
FINAL COPY

S20A0812.  ROBINSON v. THE STATE.

ELLINGTON, Justice.

James Robinson was tried before a Chatham County jury and convicted of the felony murder of four-year-old Lalia Hawthorne and of other crimes committed against Lalia and her younger sister, N. H.[1] On appeal, Robinson contends that the evidence was insufficient to support his convictions. He also argues that the trial court erred

---

[1] Lalia died on or about October 27, 2015. A Chatham County grand jury indicted Robinson for malice murder, felony murder predicated on aggravated assault, felony murder predicated on cruelty to children in the first degree, aggravated assault, and cruelty to children in the first degree upon Lalia. The grand jury also charged Robinson with aggravated assault and two counts of cruelty to children in the first degree upon N. H. Robinson was tried before a jury in February and March of 2018. The jury found Robinson not guilty of malice murder and guilty of the remaining charges. The trial court sentenced Robinson to life in prison without parole on one count of felony murder and to four consecutive prison terms of 20 years each on the count of aggravated assault of N. H. and the three counts of cruelty to children in the first degree. The second count of felony murder was vacated by operation of law, and the aggravated assault of Lalia merged into the remaining count of felony murder. Robinson filed a motion for new trial on March 19, 2018, which he amended on July 5, 2019, after which he waived his right to a hearing on the motion and elected to have the trial court rule on the briefs. The trial court denied the motion on December 12, 2019. Robinson's timely appeal was docketed to the April 2020 term of this Court and submitted for a decision on the briefs.

in admitting evidence that he committed a prior act of violence upon Summer Sanchez, his then-girlfriend and the mother of the two victims, and by allowing an expert witness to testify to an ultimate issue in the case. We vacate Robinson's conviction for Count 9, one of his convictions for cruelty to children in the first degree upon N. H., to correct a sentencing error, but we otherwise affirm for the reasons set forth below.

Viewed in a light most favorable to the verdicts, the evidence presented at trial showed the following. In 2015, Robinson lived with Sanchez and her four minor children, two boys and two girls. Robinson worked during the day and Sanchez worked at night. Sanchez checked on her children when she returned home on the morning of October 27, 2015. Sanchez's oldest daughter, Lalia, had rolled off the bed and appeared to be sleeping, so Sanchez put her back in bed.

Later that morning, Robinson woke Sanchez up and asked her to get the truck ready while he got the girls ready. Shortly thereafter, Robinson ran outside yelling, "she can't breathe."

Sanchez and Robinson went back in the house, where Robinson performed CPR on Lalia and Sanchez called 911.

Emergency responders took Lalia to the hospital, where she arrived in cardiac arrest and died. Doctors initially suspected that Lalia had been infected with meningococcemia. The medical examiner, who found extensive bruising on Lalia's body, determined that the actual cause of her death was blunt force injury to the abdomen. At trial, the medical examiner testified that internal lacerations can cause a child to appear ill and lethargic and can lead to nausea, vomiting, and a fatal loss in blood pressure.

Sanchez's other daughter, three-year-old N. H., was admitted to the hospital on the evening of Lalia's death with complaints of having a fever and vomiting, and she was also initially suspected of suffering from meningococcemia. After Lalia's autopsy, doctors took a closer look at N. H. and determined that her bowel had been bruised. On October 30, 2015, the hospital asked Dr. Donna Evans to consult on N. H.'s case. At trial, Dr. Evans testified as an expert in pediatrics and child abuse pediatrics. According to Dr. Evans, N.

H. had been beaten and bruised, bitten on her leg by an adult, and punched in the stomach, and that the child's trauma was consistent with abuse. Dr. Evans also opined that N. H. was likely injured the night before she was admitted to the hospital.

Sanchez's two boys were approximately eight years old and five years old at the time of Lalia's death. Sanchez testified at Robinson's trial that Robinson had disciplined the boys by punching them in the chest. Sanchez also found bite marks on N. H.'s body while bathing her. Robinson told Sanchez he had been playing with the child and "bit too hard."

A social worker conducted separate forensic interviews with Sanchez's two boys on October 30, 2015. The videos of the interviews were played for the jury at Robinson's trial. During his interview, the younger boy demonstrated how Robinson would hit the girls by striking a stuffed animal in the stomach with his hand. The older boy's therapist testified that, during a session in December 2016, the child said that Robinson had pressed him against the wall and choked him.

After Robinson spoke with detectives following Lalia's death, he told Sanchez that he would "do the time." Shortly thereafter, he attempted to commit suicide by shooting himself in the head. At trial, an informant testified that he had been held in jail at the same time as Robinson. According to the informant, Robinson said he had wanted to end his life because of the "guilt." The informant also testified Robinson told him that he "hated" Sanchez, who had accused Robinson of sleeping with other women because she was no longer able to conceive. Robinson told the informant that he "did it" because he was mad at Sanchez. The informant testified that in the context of his conversation with Robinson, "it" referred to "the slaying of that child."

1. (a) Robinson contends that the evidence presented at trial was insufficient to support his convictions. When evaluating the sufficiency of evidence as a matter of due process under the Fourteenth Amendment of the United States Constitution, the proper standard of review is whether a rational trier of fact could have found the defendant guilty beyond a reasonable doubt. *Jackson*

*v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979). This Court views the evidence in the "light most favorable to the verdict, with deference to the jury's assessment of the weight and credibility of the evidence." *Hayes v. State*, 292 Ga. 506, 506 (739 SE2d 313) (2013) (citation and punctuation omitted).

As a matter of Georgia statutory law, "[t]o warrant a conviction on circumstantial evidence, the proved facts shall not only be consistent with the hypothesis of guilt, but shall exclude every other reasonable hypothesis save that of the guilt of the accused." OCGA § 24-14-6. Whether alternative hypotheses are reasonable, however, is principally a question for the jury, and this Court will not disturb the jury's finding unless it is insupportable as a matter of law. *Graves v. State*, 306 Ga. 485, 487 (1) (831 SE2d 747) (2019).

Robinson contends that the evidence presented at trial was not sufficient to exclude every reasonable hypothesis save that of his guilt. He argues that when Sanchez returned home from work between 5:30 and 6:00 a.m. and checked on the girls, neither child appeared to be injured. It follows, he contends, that the fatal injuries

inflicted on Lalia occurred later that morning, a time frame in which both he and Sanchez were present in the home. The State's evidence, Robinson maintains, did not exclude the reasonable hypothesis that Sanchez alone inflicted Lalia's fatal injuries.

But the evidence showed that Robinson told the jailhouse informant that he killed Lalia. Thus, Robinson "made not a mere incriminating admission, but a confession, which is direct evidence of his guilt, and this is not, therefore, a purely circumstantial case." *Muckle v. State*, 302 Ga. 675, 679 (1) (b) (808 SE2d 713) (2017) (citation and punctuation omitted) (where appellant admitted to the decedent's brother the main facts of the felony murder charge of which he was convicted, the admission constituted a confession).

The evidence that Robinson committed the charged crimes against N. H. was circumstantial. However, Sanchez did not testify that the children were uninjured when she checked on them after coming home from work, but that she put Lalia back on the bed because she had rolled off it, and that the child appeared to be asleep and did not wake up. Dr. Evans testified that N. H.'s injuries likely

occurred the night before she presented at the hospital. Other evidence showed that Sanchez was not home that night as she was working. And Sanchez testified that she did not hit either of her daughters in the stomach in the time leading up to Lalia's death. The jury could have found that it was not a reasonable hypothesis that Sanchez alone inflicted N. H.'s injuries. The evidence was sufficient to exclude every reasonable hypothesis other than Robinson's guilt, see OCGA § 24-14-6, and for a rational trier of fact to find beyond a reasonable doubt that Robinson was guilty of the crimes for which he was convicted. See *Jackson*, 443 U. S. at 307 (III).

(b) Robinson was charged with committing two acts of child cruelty in the first degree upon N. H., one by causing her excessive physical pain by striking her in the abdomen (Count 8) and the other by causing her excessive physical pain by biting her (Count 9). The injuries caused by these acts were manifest when N. H. was admitted to the hospital, and the State presented evidence that the injuries likely occurred the night before. The evidence failed to show,

however, that there was a deliberate interval of time between the two acts of cruelty or that they occurred other than in a single transaction. It follows that the trial court erred in sentencing Robinson on both of these counts. See *Jones v. State*, 302 Ga. 488, 492 (1) (d) (807 SE2d 344) (2017); *Gomez v. State*, 301 Ga. 445, 456 (4) (c) (801 SE2d 847) (2017). Accordingly, Robinson's conviction for Count 9 is vacated.

2. Robinson contends that the trial court erred by permitting the State to introduce evidence showing a prior act of violence by Robinson upon Sanchez in which Sanchez suffered injuries to her legs. Assuming without deciding that the trial court erred in allowing the evidence, the error was harmless and does not require reversal. "A nonconstitutional error is harmless if it is highly probable that the error did not contribute to the verdict." *Adkins v. State*, 301 Ga. 153, 158 (3) (a) (800 SE2d 341) (2017). In assessing whether a trial court's error was harmful, "we weigh the evidence as we would expect reasonable jurors to have done so, as opposed to assuming that they took the most pro-guilt possible view of every bit

of evidence in the case." *Boothe v. State*, 293 Ga. 285, 289 (2) (b) (745 SE2d 594) (2013) (footnote omitted).

The record shows that the State made a proffer of the other acts testimony that it intended to introduce to show motive. OCGA § 24-4-404 (b) provides that "[e]vidence of other crimes, wrongs, or acts shall not be admissible to prove the character of a person in order to show action in conformity therewith[,]" but such evidence may be admissible for other purposes, including to show motive. For other acts evidence to be admissible, the State must show

> (1) the evidence is relevant to an issue in the case other than the defendant's character; (2) the probative value of the evidence is not substantially outweighed by its unfair prejudice; and (3) there is sufficient proof for a jury to find by a preponderance of the evidence that the defendant committed the other act.

*Jackson v. State*, 306 Ga. 69, 76 (2) (b) (829 SE2d 142) (2019) (citation and punctuation omitted).

During the proffer, Sanchez testified outside the presence of the jury about two previous physical altercations with Robinson, one in which her legs were injured. The trial court then instructed the jury in pertinent part that it could consider evidence of other acts

allegedly committed by Robinson only to the extent that those acts might show the motive that the State was authorized to prove in the crimes charged.

After the trial court gave the limiting instruction, the prosecutor first asked Sanchez about the fight in which her legs were injured. Sanchez described the conflict as "just an argument that turned physical" and briefly recounted the extent of her injuries, which consisted of a fractured knee, fractured ankles, and a torn ligament. The prosecutor then asked Sanchez if she remembered another fight during which Robinson punched her in the stomach, and she responded affirmatively. Sanchez could not recall telling a detective that the second fight was about her inability to have children, but she testified that such inability "probably was" the reason for the fight. She explained that Robinson wanted a child of his own, that she could not have more children, and that her inability to have another child had been a source of conflict with Robinson. On cross-examination, Sanchez could not recall when either of the two incidents occurred other than they were a "long

time" before Lalia was killed. Also on cross, she described the injuries to her legs as not requiring her to wear a cast. A detective later testified that Sanchez had told him that in July 2015, she and Robinson got into a fist fight which Robinson ended by "a final blow to her abdomen that was so hard it knocked the wind out of her."

Robinson does not contend that the trial court erred in allowing evidence of the second fight between Robinson and Sanchez. Because the jury learned from the testimony regarding the second fight that Robinson had violently punched Sanchez in the stomach, the prejudicial impact of the jury also hearing that Sanchez injured her legs during another argument with Robinson was lessened. See *Hood v. State*, 299 Ga. 95, 105-106 (4) (786 SE2d 648) (2016) (concluding that error in admitting evidence of defendant's prior drug-dealing activities was harmless in part due to properly admitted testimony showing that defendant had dealt similar drugs on other occasions). Any additional prejudice from showing two acts of violence by Robinson against Sanchez rather than one act was more than offset by the strong evidence of Robinson's guilt. See

*Kirby v. State*, 304 Ga. 472, 487 (4) (c) (819 SE2d 468) (2018) (any prejudice from showing that appellant had committed two other sets of violent crimes rather than one other set of violent crimes was offset by the other compelling evidence against him). It is highly unlikely that the admission of the evidence that Robinson had injured Sanchez's legs during an argument contributed to the jury's verdict, and any error in its admission was harmless.

3. Robinson contends that the trial court erred in allowing Dr. Evans to opine that the bite marks she observed on N. H. were intentional, aggressive, and evidence of child abuse. He argues that her opinion was inadmissible because it addressed matters that were not outside the ken of the average juror and because it improperly embraced an ultimate issue.

During the trial, Dr. Evans testified that she had observed bite marks on N. H., one on the left thigh and two on the left calf; that the bite radius was larger than a child's bite radius; and that the finding of an adult bite mark on a child shows an aggressive act. Defense counsel objected to the testimony, arguing that whether the

bite marks on N. H. showed an aggressive act or a playful act was for the jury to decide and that the opinion testimony went to the ultimate issue. After Dr. Evans, a medical doctor board-certified in child abuse pediatrics, testified outside the presence of the jury as to the basis for her opinion, which included her professional experience with children with bite marks, the trial court ruled that it would allow her testimony. She then opined that the finding of an adult bite mark on a child indicates an aggressive act, and that a bite mark demonstrating "a perfect outline of teeth and bruising" shows that the bite was committed with force and was not incidental.

The trial court did not abuse its discretion in admitting the testimony of Dr. Evans. Expert testimony is admissible if the expert's opinion is beyond the ken of the average layperson, but it is not admissible "where jurors can take the same elements and constituent factors which guide the expert to his conclusions and from them alone make an equally intelligent judgment of their own[.]" *Mosby v. State*, 300 Ga. 450, 453 (2) (796 SE2d 277) (2017)

(citations and punctuation omitted).[2] Dr. Evans's testimony was beyond the ken of the average layperson, who would not be able to make an equally intelligent judgment about the bite marks, including the force necessary for an adult to leave a bite mark on a child and whether such marks were indicia of an intentional act. See *Collum v. State*, 281 Ga. 719, 723 (3) (642 SE2d 640) (2007) (the force necessary to break a young child's rib is an issue beyond the ken of the average layperson).

Nor did Dr. Evans's testimony improperly address an ultimate issue. Generally, "testimony in the form of an opinion or inference otherwise admissible shall not be objectionable because it embraces an ultimate issue to be decided by the trier of fact." OCGA 24-7-704 (a). The exception to the rule is set forth in OCGA § 24-7-704 (b):

---

[2] We note:

> Although Georgia's new Evidence Code is applicable to the trial of this case, the evidentiary requirements relating to the admissibility of expert opinion testimony in a criminal case under the new Evidence Code (OCGA § 24-7-707) are nearly identical to those that applied under the former Evidence Code (OCGA § 24-9-67). Accordingly, it is appropriate to rely, as we do in this case, on decisions under the old Code.

*Mosby*, 300 Ga. at 453, n. 2.

> No expert witness testifying with respect to the mental state or condition of an accused in a criminal proceeding shall state an opinion or inference as to whether the accused did or did not have the mental state or condition constituting an element of the crime charged or of a defense thereto. Such ultimate issues are matters for the trier of fact alone.

As this Court has explained, "whether *the accused* committed an intentional act to harm the victim is a different question than whether *someone* likely committed an intentional act to harm the victim." *Wade v. State*, 304 Ga. 5, 11 (4) (815 SE2d 875) (2018) (citation and punctuation omitted; emphasis in original). Dr. Evans's testimony encompassed the intentional and aggressive nature of the bite marks but did not identify Robinson as having inflicted them. Her testimony was not improper. See id. at 10-11 (4) (physician's testimony that injuries to the victim were "nonaccidental" was not inadmissible under OCGA § 24-7-704 (b)).

*Judgment affirmed in part and vacated in part. All the Justices concur.*

Decided September 8, 2020.

Murder. Chatham Superior Court. Before Judge Bass.

*Amanda J. Walker*, for appellant.

*Meg E. Heap, District Attorney, Jennifer L. Parker, Assistant District Attorney; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Mark S. Lindemann, Assistant Attorney General*, for appellee.