310 Ga. 559
FINAL COPY

S20A1367. CARTER v. THE STATE.

NAHMIAS, Presiding Justice.

Appellant Marquerius Dandre Carter was convicted of malice murder and two firearm offenses in connection with the shooting death of Sarferaz Khan.[1] He appeals, arguing that the evidence presented at his trial was insufficient to support his convictions and that his trial counsel provided ineffective assistance by failing to object to lay witness opinion and hearsay testimony. We affirm.[2]

---

[1] The victim's first name is spelled inconsistently in the record and briefs. This opinion uses the spelling used in the medical documents in the record.

[2] The crimes occurred on February 7, 2016. In May 2016, a Crisp County grand jury indicted Appellant for malice murder, felony murder, aggravated assault, possession of a firearm during the commission of a felony, and possession of a firearm by a convicted felon. His trial began on November 14, 2016, and on the next day the jury found him guilty on all counts. (The count for possession of a firearm by a convicted felon had been bifurcated, and after the main trial a brief additional proceeding was held where the jury found Appellant guilty of that charge.) The trial court sentenced Appellant to serve life in prison without the possibility of parole for malice murder, five consecutive years for possession of a firearm during the commission of a felony, and five concurrent years for possession of a firearm by a convicted felon. The court originally merged both the felony murder count and the aggravated assault count into the malice murder conviction, but the court later vacated the felony murder count. Appellant filed a timely motion for new trial, which he amended twice with new counsel. After an evidentiary hearing, the trial

1. (a) When viewed in the light most favorable to the verdicts, the evidence presented at Appellant's trial showed the following. Around 1:00 a.m. on February 7, 2016, Khan was closing the grocery store he owned in Cordele. Two of his employees, Lynda Rowe and her son Otis Rowe, were helping. While the Rowes were outside the store's doors locking up, Khan picked up trash in the parking lot. Otis saw a person coming around the corner of the store, and both Otis and Lynda heard a man yell, "Don't move, don't move," followed by multiple gunshots.

Surveillance video recordings of the parking lot show the man, later identified as Appellant, running into the parking lot with a white t-shirt wrapped around his face and a gun in his hand. Appellant ran toward Khan and fired at least two shots at Khan as Khan ran away, drew his own gun, and fired at least one shot. Appellant then caught up to Khan and the two men collided and fell

court denied the motion in November 2019. Appellant filed a timely notice of appeal, and the case was docketed to the August 2020 term of this Court and submitted for a decision on the briefs.

2

to the ground, where additional shots were fired.[3]

The Rowes testified that after the two men fell, they struggled on the ground. Appellant had dropped his .380 pistol; he tried to regain control of it, but Lynda, who had run toward the men, grabbed it, pointed it at Appellant, and told him, "Don't move." After Otis called 911, Lynda handed him Appellant's gun, and Otis started repeatedly kicking Appellant. Lynda and Otis also took the t-shirt off Appellant's face. Appellant told Otis, "I'm sorry, Bro, I'm sorry. I didn't mean to do it." Meanwhile, Lynda checked on Khan, saw his .40-caliber pistol, picked it up, and kept it until she went to the police department later that morning. Khan was not moving or speaking when Lynda checked on him. The surveillance video recordings are

---

[3] The Rowes both testified that Appellant fired the first shot, but they acknowledged that they did not actually see the first shot being fired. Otis testified that he knew that Appellant shot first because of what he heard; Lynda did not explain how she knew that Appellant shot first. The video recordings do not have audio, but gunshots are indicated by flashes of light, at least where the guns were fired at angles captured by the videos. Appellant argued at trial that the video recordings do not clearly show whether he or Khan fired the first shot; the State argued that the videos clearly depict Appellant firing the first shot. It appears from the videos that Appellant's gun flashed before the flash from Khan's gun.

3

consistent with this testimony.

Police officers quickly arrived at the store. The first officer to arrive placed Appellant in handcuffs. Otis gave the officer Appellant's gun. Appellant asked about Khan's status and said, "I didn't mean to," "I don't know how I got here," and "I'm on some bad drugs." Appellant had a gunshot wound in his left thigh; while being treated in an ambulance, he said that he was sorry and again asked about Khan's status.

Emergency medical personnel found Khan lying face down in the parking lot with no detectable pulse. He took three or four gasping breaths, but then he stopped breathing and could not be revived. Khan had been shot three times: once in the chest, once in the left thigh, and once in the right knee.

At the scene, investigators found seven cartridge cases fired from a .380 pistol and two .40-caliber cartridge cases. Investigators also found a series of shoeprints in the wet mud along a narrow path between the store and the neighboring building; the shoeprints led toward the corner of the store where Otis saw Appellant entering

4

the parking lot.

Appellant did not testify at trial. His primary argument was that he acted in self-defense because Khan shot first. In the second part of the bifurcated trial, the State presented evidence of Appellant's prior felony conviction for robbery by intimidation.

(b) Appellant disputes the legal sufficiency of the evidence supporting his convictions, arguing that the Rowes were not credible witnesses and that the State failed to prove that he killed Khan with malicious intent rather than in self-defense. As we have explained many times before, however:

> When evaluating the sufficiency of the evidence, this Court does not reweigh the evidence or resolve conflicting testimony. Instead, this Court reviews the evidence in a light most favorable to the verdict[s] and defers to the jury's assessment of the weight and credibility of the evidence.

*Mosby v. State*, 300 Ga. 450, 452 (796 SE2d 277) (2017). See also *Lay v. State*, 305 Ga. 715, 717 (827 SE2d 671) (2019) ("[A] jury is free to disbelieve the defendant's evidence of self-defense.").

Moreover, even if the jury believed Appellant's argument at

5

trial that Khan fired first, there was sufficient evidence for the jury to conclude that Appellant was the initial aggressor in the confrontation, as he entered the grocery store parking lot at 1:00 a.m. and ran toward Khan with his gun drawn and a t-shirt wrapped around his face, shouting "Don't move." See OCGA § 16-3-21 (b) (3) ("A person is not justified in using force [in self-defense] if he . . . [w]as the aggressor[.]"); *Mosby*, 300 Ga. at 452 ("An aggressor is not entitled to a finding of justification."). When viewed in the light most favorable to the verdicts, the evidence presented at trial was sufficient to authorize a rational jury to reject Appellant's claim of self-defense and find him guilty beyond a reasonable doubt of the malice murder of Khan as well as the two firearm offenses of which he was convicted. See *Jackson v. Virginia*, 443 U.S. 307, 319 (99 SCt 2781, 61 LE2d 560) (1979).

2. Appellant argues that his trial counsel provided ineffective assistance by failing to object to lay witness opinion and hearsay testimony. To prevail on these claims,

Appellant must establish that his counsel's performance

was professionally deficient and that he suffered prejudice as a result. To show deficient performance, Appellant must prove that his lawyer performed his duties in an objectively unreasonable way, considering all the circumstances and in the light of prevailing professional norms. In particular, decisions regarding trial tactics and strategy constitute deficient performance only if they were so patently unreasonable that no competent attorney would have followed such a course. To establish prejudice, Appellant must prove that there is a reasonable probability that, but for counsel's deficiency, the result of the trial would have been different.

*Barboza v. State*, 309 Ga. 319, 325-326 (845 SE2d 673) (2020) (citations and punctuation omitted). Appellant's two claims fail this test.

(a) At trial, GBI Agent David Bryan Smith gave the following testimony comparing the shoeprints found on the path leading to the grocery store parking lot with the Nike athletic shoes that Appellant was wearing when he was arrested in the parking lot after the shooting:

> PROSECUTOR: Now, what was State's Exhibit 57? What did this photograph show?
> AGENT SMITH: The subject involved in this case, his shoes.
> PROSECUTOR: And did you, yourself, look at the bottom of those shoes?

7

AGENT SMITH: I did.

PROSECUTOR: And I know, just visually, you didn't do any kind of scientific comparison but did you look at the bottom of those shoes and look at your footprints that you found out there in that narrow path beside the store?

AGENT SMITH: Yes, sir. Visually, looking at the two side by side, there are a number of characteristics similar in the pattern of the shoe and in the pattern of the shoe impressions.

Appellant's counsel did not object to this testimony.

Appellant now asserts that his trial counsel should have objected to this evidence as improper lay witness testimony under OCGA § 24-7-701 (a), which says:

> If the witness is not testifying as an expert, the witness's testimony in the form of opinions or inferences shall be limited to those opinions or inferences which are:
> (1) Rationally based on the perception of the witness;
> (2) Helpful to a clear understanding of the witness's testimony or the determination of a fact in issue; and
> (3) Not based on scientific, technical, or other specialized knowledge within the scope of Code Section 24-7-702.

Appellant does not dispute that Agent Smith's testimony meets the requirement in paragraph (a) (1), as the testimony was "rationally

based on [the agent's] perception" of the bottom of Appellant's shoes and the shoeprints found at the crime scene.

Appellant argues that Agent Smith's testimony does not satisfy paragraph (a) (2), however, because the jury could have made its own comparison of Appellant's shoes and the shoeprints. But Agent Smith was in a better position than the jury to compare the shoeprints found at the scene to the Appellant's shoe treads, particularly because the jury was not shown any pictures of Appellant's shoe treads and none were entered into evidence. See *United States v. Shields*, 480 Fed. Appx. 381, 386-387 (6th Cir. 2012) (holding under Federal Rule of Evidence 701 that the jury benefitted from a police officer's shoeprint-comparison testimony because the officer had "more time to study and compare the evidence" than the jury had). See also *Bullard v. State*, 307 Ga. 482, 491 (837 SE2d 348) (2019) (explaining that if the trial court had "some basis for concluding that a witness [was] more likely than the jury" to correctly compare a defendant with an individual depicted in relevant photographs, then the witness's testimony identifying the

defendant in the photographs was properly admissible under OCGA § 24-7-701 (a)).[4]

Appellant also argues based on OCGA § 24-7-701 (a) (3) that this sort of testimony could be given only by a qualified shoeprint-identification expert. The kind of basic visual shoeprint comparison done by Agent Smith does not, however, require specialized knowledge. See *Shields*, 480 Fed. Appx. at 386.[5] For these reasons, an objection to Agent Smith's testimony as improper lay witness testimony would have been properly overruled, and Appellant's trial counsel did not perform deficiently by failing to make a meritless

---

[4] Because Federal Rule of Evidence 701 was the model for OCGA § 24-7-701 (a), we look to decisions of the federal appellate courts for guidance when considering the meaning of this Georgia evidence rule. See *Bullard*, 307 Ga. at 492.

[5] Although OCGA § 24-7-701 (a) (3) refers to the expert testimony provision in OCGA § 24-7-702, § 24-7-702 applies only in civil cases. See OCGA § 24-7-702 (a). OCGA § 24-7-707 governs qualified expert testimony in criminal cases, carrying forward a provision of Georgia's former Evidence Code. See *Winters v. State*, 305 Ga. 226, 227 n.2 (824 SE2d 306) (2019). When applying the former provision, this Court held that a basic comparison of shoeprints with the external characteristics of particular shoes is not a matter of scientific principle or technique. See *Belton v. State*, 270 Ga. 671, 674 (512 SE2d 614) (1999).

objection. See *Johnson v. State*, 305 Ga. 475, 480 (826 SE2d 89) (2019).

Moreover, even assuming that Agent Smith's testimony could have been excluded, Appellant has not shown that the exclusion of the shoeprint comparison would have changed the result of his trial. There was no real dispute that Appellant had come from the side of the grocery store into the parking lot to confront Khan: a single series of fresh shoeprints were found in the wet mud on the path by the grocery store leading to the parking lot; Otis Rowe testified that he saw Appellant enter the parking lot from around the corner of the store; the surveillance video recordings show Appellant entering the parking lot and running toward the victim with his gun drawn; and Appellant was arrested there after the shooting. Accordingly, the agent's testimony that the shoeprints were Appellant's was of negligible importance, and the other evidence of Appellant's guilt was compelling. Appellant has therefore also failed to show prejudice resulting from this testimony.

(b) Appellant contends that his trial counsel provided

ineffective assistance by failing to object to hearsay testimony from Officer Thomas Moore, the officer to whom Lynda Rowe gave Khan's gun at the police station. Officer Moore gave the following account of his interaction with Lynda at the police station:

> When we arrived, Ms. [Lynda] Rowe came forward and advised me that she had the [victim's] gun in her possession. She explained that, during the altercation, or during this incident, she then gained access to the firearm, and so she picked it up and kept it on her possession to try to, I guess, make the scene safer. She then advised me that it was in her sleeve. She was wearing long sleeves. I believe it was a sweatshirt. But she advised me it was in her sleeve. She, then, removed the gun and turned it over to me.

Appellant's counsel did not object to this testimony. Earlier in the trial, both Lynda and Otis had testified that Lynda took Khan's gun after his altercation with Appellant. Lynda also testified that she later turned Khan's gun over to the police at the police station.

Appellant argues that Officer Moore's testimony was hearsay that bolstered Lynda's testimony. But the officer's description of Lynda giving him Khan's gun at the police station was not hearsay, and even if we assume that his account of what Lynda said at that

12

time was objectionable hearsay, the issue of what Lynda did with Khan's gun was not disputed or important. In short, this testimony was not detrimental to Appellant, and he has failed to show that his trial counsel's decision not to object to this insignificant testimony was objectively unreasonable. See, e.g., *Jones v. State*, 292 Ga. 593, 601-602 (740 SE2d 147) (2013). He has failed to show prejudice for the same reason.

*Judgment affirmed. Melton, C. J., and Boggs, Peterson, Bethel, Ellington, and McMillian, JJ., concur. Warren, J., not participating.*

DECIDED DECEMBER 7, 2020.
Murder. Crisp Superior Court. Before Judge Chasteen.
*Randall P. Sharp*, for appellant.
*Bradford L. Rigby, District Attorney; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Alex M. Bernick, Assistant Attorney General*, for appellee.