303 Ga. 709
FINAL COPY


S18A0114.  JORDAN v. THE STATE.


HUNSTEIN, Justice.

Michael Jordan was convicted of felony murder and related offenses arising out of the shooting death of Stacy Johnson and the aggravated assaults of Rodney Miles and Shatik Bryant.  On appeal, Appellant contends that the evidence was insufficient to sustain the verdicts, that the trial court erred in admitting certain evidence, that he was entitled to a mistrial, and that the trial court should have granted his motion for new trial.  Though we find no reversible error, we do see error in certain aspects of Appellant's sentence, and we must, therefore, vacate and remand for resentencing.[1]

---

[1] In July 2014, a Clayton County grand jury returned an indictment charging Appellant with crimes related to Johnson's death. Appellant was tried on the following 14 counts pertaining to the March 2013 incident: Count 1 — malice murder, Count 2 — felony murder predicated on aggravated assault, Count 3 — aggravated assault (Johnson), Count 4 — felony murder predicated on possession of a firearm by a convicted felon, Count 5 — possession of a firearm by a convicted felon, Count 6 — felony murder predicated on aggravated battery, Count 7 — aggravated battery (Johnson), Count 8 — felony murder predicated on a violation of

1. When viewed in a light most favorable to the verdicts, the evidence adduced at trial established as follows. On the evening of March 3, 2013, Shatik Bryant, Rodney Miles, Darnell Miles, and Stacy Johnson made the short drive from Bryant's gated apartment complex to a local gas station and convenience store. While in the store, Bryant and Rodney observed a man wearing a dark-colored, letterman-style jacket emblazoned with "Southside Mafia Elite"

---

the Street Gang Terrorism and Prevention Act, Count 9 — participation in criminal gang activity through the commission of the offense of aggravated assault, Count 10 — aggravated assault (Miles), Count 11 — aggravated assault (Bryant), and counts 12 through 14 — possession of a firearm during the commission of a felony (Johnson, Miles, and Bryant, respectively).

Following a trial conducted April 27 – May 2, 2015, a jury returned guilty verdicts on Counts 2 through 5 and 8 through 14, while acquitting Appellant on Counts 1, 6, and 7. The trial court sentenced Appellant as follows: Count 2 — life imprisonment without the possibility of parole; Count 5 — twenty years' imprisonment, to be served consecutive to Count 2; Count 9 — fifteen years' imprisonment, to be served consecutive to Count 2; Count 10 — twenty years' imprisonment, to be served consecutive to Count 2; Count 11 — twenty years' imprisonment, to be served consecutive to Count 10; Count 12 — five years' imprisonment, to be served consecutive to Count 2; Count 13 — five years' imprisonment, to be served consecutive to Count 10; and, Count 14 — five years' imprisonment to be served consecutive to Count 11, for a total sentence of life imprisonment without the possibility of parole plus 90 years. All other counts were merged. As we discuss below, however, Appellant's sentence, at least in part, was improper.

Trial counsel filed a motion for new trial in May 2015; that motion was later expanded and amended by new counsel in May 2016. The trial court denied the motion in March 2017; just days later, Appellant filed a timely notice of appeal. This case was docketed to the term of Court beginning in December 2017 and was thereafter submitted for a decision on the briefs.

encircling a hand sign understood by the men to be a gang symbol. Indeed, the jury heard testimony that the Southside Mafia is a gang that operates in Clayton County with territory near to or including the convenience store. Bryant testified that he was familiar with the gang and that he had no concerns with the man's presence in the store, even though Johnson was a member of a rival gang — the "Hit Squad." Though nothing transpired inside the store, the man became aggressive in the parking lot, flashing gang signs and yelling at the four men. After responding with his own heated words, Bryant left with his friends to return to the apartment, driving past the man as he stood next to a blue Dodge Avenger.

Moments later, the group of men heard squealing tires and observed the blue Dodge quickly approaching from the rear; gunfire erupted from the blue Dodge, shattering the back window and striking Johnson in the head. A nearby resident also heard squealing tires and five very loud gunshots from a passing vehicle. Bryant turned into the entrance of his apartment complex, but it was blocked by a car waiting at the gate. Bryant and the Miles brothers ran from their vehicle after the blue Dodge missed the turn, but the reprieve was short lived as the blue Dodge turned around and assailed the men with a second round

3

of gunfire.

Emergency services transported Johnson to Grady Hospital, where he later succumbed to his injuries. At the hospital, investigators interviewed Bryant and Rodney, both of whom independently identified Appellant in a photographic lineup as the man from the convenience store with the blue Dodge. Meanwhile, law enforcement recovered six shell casings at the entrance of the apartment and secured surveillance video from the convenience store, which shows Bryant and his friends, as well as Appellant, independently shopping in the store. A gas station employee identified Appellant as a regular and testified that, on the night of the shooting, Appellant was in the store, wearing his letterman-style jacket, and driving a blue Dodge Avenger.

Investigators later searched the apartment that Appellant shared with his girlfriend, Alexandria Grace, and discovered under a sofa a "Southside Mafia" jacket and a .40 caliber Taurus pistol. Grace testified that both the jacket and the firearm belonged to Appellant, and, further, that she had permitted him to use her bluish-grey Dodge Avenger on the night of the shootings. The State's firearm expert opined that the six shell casings recovered from the scene came from Appellant's .40 caliber Taurus; the gun did not, however, match the

4

projectile recovered from the deceased. Finally, the State adduced evidence that, at the time of the murder, Appellant had previously been convicted of a felony.

Appellant asserts that the evidence was insufficient because the State's case was speculative, conflicting, and filled with "mistrustful" testimony. However, "'[t]his Court does not reweigh evidence or resolve conflicts in testimony; instead, evidence is reviewed in a light most favorable to the verdict, with deference to the jury's assessment of the weight and credibility of the evidence.'" (Citations omitted.) Hayes v. State, 292 Ga. 506, 506 (739 SE2d 313) (2013). Likewise, there is no merit to Appellant's complaint that the State failed to adduce fingerprint evidence, DNA evidence, or the actual murder weapon. "Although the State is required to prove its case with competent evidence, there is no requirement that it prove its case with any particular sort of evidence." Plez v. State, 300 Ga. 505, 506 (796 SE2d 704) (2017).

The evidence presented below established that, on the night in question, Appellant — a convicted felon and gang member — was at the convenience store driving a blue Dodge Avenger where he encountered the victims, including Johnson, a member of a rival gang. After a verbal altercation between Appellant

5

and Bryant, Bryant drove off, and the blue Dodge followed; shots were fired from the blue Dodge into Bryant's vehicle, killing Johnson. One of the guns used in the shooting was recovered from Appellant's apartment. This evidence was sufficient to authorize a rational trier of fact to conclude beyond a reasonable doubt that Appellant was guilty of the crimes of which he was convicted. Jackson v. Virginia, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

2. Appellant contends that the trial court erroneously denied his motion to suppress the photographic-lineup identifications made by Bryant and Rodney Miles. This argument is without merit.

"It is error to allow testimony concerning a pre-trial identification of the defendant if the identification procedure was impermissibly suggestive and, under the totality of the circumstances, the suggestiveness gave rise to a substantial likelihood of misidentification." Miller v. State, 270 Ga. 741, 743 (512 SE2d 272) (1999) (citing Neil v. Biggers, 409 U. S. 188 (93 SCt 375, 34 LE2d 401) (1972)). "An identification procedure is impermissibly suggestive when it leads the witness to an 'all but inevitable identification' of the defendant as the perpetrator." (Citations omitted.) Miller, 270 Ga. at 743. "[I]f the court

6

does not find that the lineup was suggestive then it need not reach the issue of whether there was a substantial likelihood of misidentification." Waters v. State, 281 Ga. 119, 120 (636 SE2d 538) (2006). The trial court's ruling is reviewed for abuse of discretion. Id.

Appellant complains that the lineup was improper because, he says, it occurred following a "stressful" and "traumatic" incident, and neither Bryant nor Rodney Miles had an adequate opportunity to observe Appellant or the shooter from the blue Dodge. Appellant's concerns, however, relate to the second prong of our analysis — likelihood of misidentification — not whether there was an impermissibly suggestive lineup in the first instance. With respect to the first prong regarding suggestiveness, the trial court received testimony at the suppression hearing that the photographs included in the lineup were automatically generated by the Department of Driver Services; the photographs depicted individuals with similar physical features; Bryant and Miles were kept in separate rooms during the photographic-lineup procedure; both men were given proper instructions regarding the photographic array; neither man was told whether Appellant's photograph was included in the lineup; and each witness made his identification independently and without suggestion from

7

investigators. The trial court had ample testimony from which to conclude that the pre-trial photographic lineup was not impermissibly suggestive and, thus, was not improper. Accordingly, the trial court did not abuse its discretion in denying Appellant's motion to suppress. See Williams v. State, 275 Ga. 622 (2) (571 SE2d 385) (2002); Miller, 270 Ga. at 743.

3. Over Appellant's objection, the trial court permitted the State to adduce evidence at trial pursuant to OCGA § 24-4-404 (b) ("404 (b)") concerning Appellant's participation in a January 2013 burglary and related drive-by shooting. Specifically, the jury heard testimony that Appellant and an individual named Keith Trammel burglarized a Clayton County home in January 2013; the homeowner returned unexpectedly and one of the burglars brandished a weapon to stop the homeowner from giving chase; the burglarized residence was "shot up" the night before Trammel's court date (at which the homeowners were scheduled to appear); the projectiles from that drive-by shooting came from the same firearm that killed Johnson; and Appellant called Trammel to discuss ways in which Trammel could avoid testifying at Appellant's murder trial. The jury was instructed that it was permitted to consider this evidence for the purposes of knowledge, intent, plan, or motive. Now, on appeal, Appellant contends that

the admission of the 404 (b) evidence was erroneous.

Assuming without deciding that the admission of the 404 (b) evidence was erroneous, any error was harmless. The evidence concerning Appellant's involvement in Johnson's death was compelling. Appellant, a member of the Southside Mafia gang, was identified by two surviving victims as the man standing beside the blue Dodge immediately before the shooting, and a convenience-store attendant — who characterized Appellant as "a regular" — testified that Appellant was at the store with the blue Dodge on the night in question. Just moments after Appellant's verbal altercation with Bryant and encounter with rival-gang member Johnson, multiple witnesses heard squealing tires and numerous gunshots, which witnesses said came from the blue Dodge. Further, the six bullet casings recovered from the entrance of the apartment complex matched a firearm that was hidden in Appellant's apartment and that was later identified as belonging to him; notably, the jury heard testimony that the gun was missing exactly six bullets. We also note that the evidence concerning the January 2013 incident was not particularly potent. Though the jury heard testimony that Appellant and Trammel had been involved in the January 2013 burglary, the homeowner did not identify Appellant as the man

who had brandished the firearm. Likewise, though the same firearm was used in both the drive-by shooting and Johnson's death, the jury heard little testimony that directly implicated Appellant in that prior shooting. Accordingly, "it is highly probable that the error did not contribute to the verdict." Peoples v. State, 295 Ga. 44, 55 (757 SE2d 646) (2014) (citation and punctuation omitted).

4. During direct examination, Appellant's ex-girlfriend, Grace, was asked whether she had seen Appellant since the shooting, and she replied, "Not besides visitation, no." Appellant moved for a mistrial, arguing that Grace's "visitation" response was a clear reference to Appellant's pre-trial incarceration and was therefore impermissible character evidence; the trial court denied the motion, and Appellant contends that the trial court's ruling was erroneous.

"It is within the sound discretion of the trial court to grant or deny a motion for mistrial, and such ruling will not be disturbed 'unless it resulted from a manifest abuse of that discretion.'" (Citation omitted.) Taylor v. State, 303 Ga. 225, 229 (3) (811 SE2d 286) (2018). "When prejudicial matter is improperly placed before the jury, a mistrial is appropriate if it is essential to the preservation of the defendant's right to a fair trial." White v. State, 268 Ga. 28, 32 (486 SE2d 338) (1997). Here, Grace's mention of "visitation" did not

10

necessarily "imply that [A]ppellant . . . was in custody. Even if it did, a passing reference to defendant's incarceration does not place his character in evidence." Lewis v. State, 287 Ga. 210, 212 (695 SE2d 224) (2010). See also Taylor v. State, 272 Ga. 559, 561 (532 SE2d 395) (2000) ("[M]ere mention that a defendant has been in jail falls short of placing his character at issue."). Accordingly, the statement from Grace did not place Appellant's character at issue, and the trial court did not abuse its discretion in denying the motion for a mistrial.

5. Appellant asserts that the trial court erred by denying his motion for new trial. Specifically, Appellant contends that the trial court should have exercised its discretion as the "thirteenth juror" and granted a new trial pursuant to OCGA §§ 5-5-20 and 5-5-21.

Under OCGA § 5-5-20, a trial court is permitted to grant a new trial "[i]n any case when the verdict of the jury is found contrary to evidence and the principles of justice and equity," id., and, under OCGA § 5-5-21, that court is authorized to award a new trial "where the verdict may be decidedly and strongly against the weight of the evidence even though there may appear to be some slight evidence in favor of the finding." Id. "The statutes 'afford the trial

11

court broad discretion to sit as a "thirteenth juror" and weigh the evidence on a motion for new trial alleging these general grounds.'" (Citations omitted.) Walker v. State, 292 Ga. 262, 264 (737 SE2d 311) (2013). "When faced with a motion for new trial based on these general grounds, the trial court has the duty to exercise its discretion and weigh the evidence." Id. Where the trial court has performed this duty, "then we have no basis for reviewing the court's decision, as 'such a decision is one that is solely within the discretion of the trial court.'" (Citations omitted.) Taylor v. State, 344 Ga. App. 122, 133 (809 SE2d 76) (2017).

The order denying Appellant's motion for new trial reflects that the trial court acted as the thirteenth juror — weighing the evidence and considering the credibility of the witnesses — and determined that Appellant was not entitled to a new trial on the general grounds. "The trial court having exercised its discretion as the thirteenth juror, and this Court having found the evidence was sufficient to support the verdict, we find no abuse of discretion in its denying the motion for new trial." Smith v. State, 300 Ga. 532, 534 (796 SE2d 671) (2017).

6. Finally, though not raised by the parties, we find error in Appellant's sentencing. As to Count 5 — possession of a firearm by a convicted felon —

the trial court sentenced Appellant to twenty years' imprisonment; however, the sentencing range for that offense is "one to five years." Hillman v. Johnson, 297 Ga. 609, 609 (774 SE2d 615) (2015). See also OCGA § 16-11-131. Accordingly, the 20-year sentence was erroneous, and this case is remanded for the trial court to resentence Appellant on this count.

Judgment affirmed in part and vacated in part, and case remanded. All the Justices concur.

Decided May 21, 2018.

Murder. Clayton Superior Court. Before Judge Carter.

Deborah L. Leslie, for appellant.

Tracy Graham Lawson, District Attorney, Elizabeth A. Baker, Elizabeth Rosenwasser, Assistant District Attorneys; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Scott O. Teague, Assistant Attorney General, for appellee.