311 Ga. 305
FINAL COPY

S21A0141.  GOBERT v. THE STATE.

BETHEL, Justice.

In May 2016, a Walker County jury found Michael James Gobert guilty of felony murder and other crimes in connection with the shooting death of Johnny Montgomery and the aggravated assaults of Edrius Putnam and Deisman Harrison. On appeal, Gobert argues that the evidence presented at his trial was insufficient to sustain his convictions; the trial court erred by excluding Gobert from bench conferences; the trial court erred by failing to require the court reporter to transcribe jury selection and the charge conference; and the trial court erred by failing to rebuke the prosecutor for allegedly improper statements made during closing argument or grant a mistrial. For the reasons set forth below, we affirm.[1]

---

[1] The crimes occurred on October 19, 2015. On January 5, 2016, a Walker

1. Viewed in the light most favorable to the verdicts, the evidence presented at trial showed the following. At around 8:00 p.m. on October 19, 2015, Nicole Carroll, Gobert's adult step-daughter, invited both Harrison and Montgomery over to her mobile home, which was adjacent to Gobert's home and on his property. Harrison and Montgomery invited Putnam to join them, and the three men arrived at Carroll's mobile home together. Upon their arrival, the group began drinking alcohol, and Harrison, Montgomery, and Carroll began to engage in sexual activity as a

County grand jury indicted Gobert on 11 counts: malice murder of Montgomery (Count 1); felony murder of Montgomery (Count 2); aggravated assault of Montgomery (Count 3); two counts of aggravated assault of Putnam (Counts 4 and 5, respectively); aggravated assault of Harrison (Count 6); and five counts of possession of a firearm during the commission of a felony (Counts 7-11). At a jury trial held from May 23 to 27, 2016, Gobert was found not guilty on Counts 1 and 7 but guilty on the remaining counts. The trial court sentenced Gobert to life in prison without the possibility of parole on Count 2, twenty years each on Counts 4 and 6, to be served concurrently with Count 2; and five years each on Counts 8, 10, and 11, to be served consecutively to Count 2. For purposes of sentencing, Count 3 merged with Count 2, and Count 9 merged with Count 8. Due to a scrivener's error, in its original sentencing order, the trial court erroneously entered a sentence on Count 5. However, the trial court amended its sentencing order to remove the sentence for Count 5 as it should have merged into the felony murder count. On July 5, 2016, Gobert filed a timely motion for new trial, which he later amended. The trial court denied the amended motion on July 18, 2019. Gobert filed a notice of appeal on July 26, 2019. This case was docketed in this Court to the term commencing in December 2020 and submitted for a decision on the briefs.

group, as they had done on prior occasions. After Harrison and Montgomery exited Carroll's bedroom, Putnam entered and began having sex with Carroll. However, Carroll did not permit Putnam to continue their sexual activity. Putnam then became angry with Carroll, called her a "b****," pushed her, and grabbed her throat.

Upon hearing the commotion in the bedroom, Harrison and Montgomery entered to assist Carroll and "de-escalate the situation." Harrison and Montgomery grabbed Putnam and tried to remove him from Carroll's home. Putnam, however, resisted. He continued punching at Carroll, so she hit him with a pool cue. When Harrison and Montgomery finally got Putnam outside the home, Putnam picked up a dehumidifier on Carroll's porch and threw it at Carroll, striking her in the face.

Harrison and Montgomery managed to get Putnam into Montgomery's car with the intention of leaving the property. Montgomery sat in the driver's seat. As the car began pulling away, Gobert and his wife emerged from their home next door, having heard the disturbance at Carroll's home. Upon exiting his home,

Gobert began firing toward the occupants of the car. As Montgomery tried to drive away, Gobert continued firing. The car hit a shed on Gobert's property and became stuck.

Putnam exited the car and ran into the woods after the car crashed into the shed, but Harrison and Montgomery were unable to escape. After Gobert began firing at the vehicle, Harrison hid behind a child's car seat in the back seat. He heard Montgomery say, "I've been shot," before Montgomery slumped down over the steering wheel.

Harrison then saw Gobert run toward the car carrying a gun. When he reached the car, Gobert pointed the gun at Harrison and instructed him to get out and get on his knees. Harrison said, "Please don't kill me, sir," and then asked Gobert if Montgomery was okay. Gobert replied that Montgomery was unconscious and may not be alive. Gobert held Harrison at gunpoint until law enforcement officers arrived. While holding Harrison at gunpoint on the ground, Gobert told him, "I should shoot you, n*****."

Four neighbors reported hearing gunshots. After the shooting,

Misty Sanchez and another neighbor, William Swisher, heard Harrison "beg for his life." Another neighbor called 911.

When police officers arrived in response to the call, they found Gobert and his wife holding handguns and standing over Harrison, who was on his hands and knees. Officers also noticed that the car that had struck the shed was still running. Harrison advised the police officers that Montgomery was inside the car. The police officers then found Montgomery slumped over the center console with a gunshot wound to the head. He later died in the ambulance on the way to the hospital.

As officers were attending to Montgomery, Putnam emerged from the woods behind the property, shouting, "I'm a fireman. Don't shoot!" Officers noticed that Putnam was walking with a limp. The police later learned that Putnam had been shot in the leg when he was a passenger in the car, but a key in his pocket had redirected the bullet, leaving him with only a minor leg injury.

At the scene, the officers also spoke with Carroll, who had "bloody marks" on her face. During their investigation, the officers

5

opened the door to the police car where Gobert was being detained. Before the officers said anything to him, Gobert said, "My life is over, and I messed up." After receiving *Miranda*[2] warnings and signing an acknowledgment and waiver of his rights at the police station, Gobert told detectives that earlier in the evening he awoke to voices outside. He looked out and saw "a black man" arguing with Carroll. Gobert told the police that he yelled, "Halt or I'll shoot," and that Putnam responded, "If you shoot me, you'll get the murder charge." Gobert responded to Putnam, "I don't think so, you came onto my property starting this trouble."

Gobert admitted that he shot at the car several times. When asked why, he said that when he fired at the car, he did not know if Carroll had been injured or know any details of the argument. He told the detectives that he shot at the people in the car because "they were trespassing and causing trouble."

Gobert asserts that the evidence was insufficient to support his

---

[2] See *Miranda v. Arizona*, 384 U. S. 436 (86 SCt 1602, 16 LE2d 694) (1966).

convictions for the felony murder of Montgomery and the aggravated assaults of Putnam and Harrison. When evaluating the sufficiency of the evidence to support a conviction, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Emphasis omitted.) *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979). On appeal, "this Court does not reweigh the evidence or resolve conflicting testimony." *Mosby v. State*, 300 Ga. 450, 452 (1) (796 SE2d 277) (2017).

(a) Gobert first challenges the sufficiency of the evidence as to his conviction for felony murder. Gobert was convicted of the felony murder of Montgomery predicated on aggravated assault. Specifically, Count 2 of the indictment alleged that Gobert caused Montgomery's death while in the commission of aggravated assault by shooting Montgomery in the head. Although the trial court properly merged the underlying aggravated assault count (Count 3) for sentencing, we must consider whether the evidence presented at

7

trial was sufficient to support a finding that Gobert committed the aggravated assault because it was the predicate felony for the felony murder. See *Casey v. State*, 310 Ga. 421, 423 (1) (851 SE2d 550) (2020).

OCGA § 16-5-1 (c) provides that "[a] person commits the offense of murder when, in the commission of a felony, he or she causes the death of another human being irrespective of malice." OCGA § 16-5-21 (a) (2) provides, in relevant part, that "[a] person commits the offense of aggravated assault when he or she assaults . . . [w]ith a deadly weapon[.]" As relevant here, a person commits an assault when he or she "[a]ttempts to commit a violent injury to the person of another[.]" OCGA § 16-5-20 (a).

Eyewitness testimony established that, after Gobert emerged from his home, he shot numerous times into the car occupied by Montgomery, Harrison, and Putnam. Gobert admitted shooting at the men that night, and witnesses at the scene testified that he yelled a threat at them after opening fire. Montgomery was struck in the head by one of the shots and later died.

Gobert argues that the evidence was insufficient in light of the evidence that he acted in self-defense, defense of others, and defense of his property. "When a defendant effectively raises an affirmative defense such as self-defense the State bears the burden of disproving the asserted defense beyond a reasonable doubt." *Mosby*, 300 Ga. at 451 (1). The State presented evidence that Gobert was not in a position to determine whether and to what extent Carroll was in danger and other evidence that "undermined [Gobert's] claim of self-defense." *Martin v. State*, 306 Ga. 538, 541 (1) (832 SE2d 402) (2019). Further, Gobert shot at the car while the three men were fleeing, and neither Carroll nor the Goberts were in any danger or any imminent threat of harm at that point. See OCGA § 16-3-21 (a) (stating that a person is "justified" in using deadly force "only if he or she reasonably believes that such force is necessary to prevent death or great bodily injury to himself or herself or a third person"); see also OCGA § 16-3-23 (defining "defense of habitation"). Gobert's arguments in this regard, like his arguments concerning the reliability of the police investigation and quality of the State's

evidence, were matters within the province of the jury to consider and decide. See *Lowery v. State*, 310 Ga. 360, 362 (1) (a) (851 SE2d 538) (2020); see also *Ferguson v. State*, 297 Ga. 342, 344 (1) (773 SE2d 749) (2015) (jury was authorized to disbelieve defendant's self-defense theory).

Accordingly, this evidence was sufficient to authorize a rational trier of fact to find Gobert guilty of aggravated assault and the felony murder of Montgomery predicated on that aggravated assault. See *Jackson*, 443 U. S. at 319 (III) (B); see also *Dunbar v. State*, 263 Ga. 769, 769 (1) (438 SE2d 356) (1994).

(b) Gobert also challenges the sufficiency of the evidence presented at trial as to the aggravated assaults of Putnam (Count 4) and Harrison (Count 6). As with the evidence supporting Gobert's conviction for felony murder predicated on the assault of Montgomery, the evidence presented was sufficient to support the jury's verdicts on these counts of aggravated assault.

Count 4 alleged that Gobert committed an aggravated assault against Putnam by shooting him in the right leg. Count 6 alleged

that Gobert committed an aggravated assault against Harrison by firing a gun in his direction. As to both counts, the jury heard evidence that Gobert fired multiple shots into the car where Putnam and Harrison were riding and that one of those shots hit Putnam's leg. Thus, the evidence presented at trial was sufficient to support the jury's verdicts as to the aggravated assaults of Putnam and Harrison. Accordingly, this enumeration of error fails.[3]

2. Gobert also contends that the trial court erred by failing to include Gobert in bench conferences that Gobert's attorney attended. We disagree.

Before the first bench conference in the jury selection process after Gobert's case had been called for trial, the trial court stated the following: "Let's take that up, up here. Mr. Dunn, your client's always welcome up here just so you know." Dunn, Gobert's trial

---

[3] Gobert has not challenged the sufficiency of the evidence presented in regard to the three counts of possession of a firearm during the commission of a felony for which he was found guilty and sentenced. Because this case was docketed to this Court's term commencing in December 2020, we do not review the sufficiency of the evidence as to those counts sua sponte. See *Davenport v. State*, 309 Ga. 385, 399 (4) (b) (846 SE2d 83) (2020).

11

counsel, responded, in Gobert's presence, "Mr. Gobert, the defendant is staying here, Your Honor." The court then stated, "All right. Noted for the record." The court then conducted four additional bench conferences with potential jurors, Gobert's trial counsel, the prosecutor, and a court reporter, which resulted in the dismissal of some potential jurors. Gobert made no objection at trial to his absence from any of those bench conferences but now asserts on appeal that it was error to exclude him.

A defendant has a right to be present at critical stages of the criminal proceeding against him. See *Huff v. State*, 274 Ga. 110, 111 (2) (549 SE2d 370) (2001). "[P]roceedings at which the jury composition is selected or changed are critical stages at which the defendant is entitled to be present." (Citation and punctuation omitted.) *Zamora v. State*, 291 Ga. 512, 518 (7) (b) (731 SE2d 658) (2012). However, "the right to be present belongs to the defendant, and he is free to relinquish it if he so chooses." (Citation and punctuation omitted.) *Burney v. State*, 299 Ga. 813, 820 (3) (b) (792 SE2d 354) (2016). A defendant

may personally waive his right to be present at a stage in the trial, or counsel may waive this right for the defendant. But in order for the waiver of counsel to be binding on the defendant, it must be made in his presence or by his express authority, or be subsequently acquiesced in by him.

(Citation and punctuation omitted.) *Pennie v. State*, 271 Ga. 419, 421 (2) (520 SE2d 448) (1999). Gobert was present in court both when the trial court invited him to "always" join his counsel at bench conferences and when his attorney waived his presence at such conferences, and he did not voice any objection to his counsel's statement. Nor did he or his counsel ever seek his inclusion in any of the subsequent bench conferences of which Gobert now complains on appeal. Thus, his right to be present was waived, and this enumeration of error fails.

3. Gobert also contends that the trial court erred when it failed to instruct the court reporter to transcribe jury selection and the charge conference. However, the record shows that jury selection and the charge conference were, in fact, transcribed and recorded, including individual queries with potential jurors. Accordingly, this

13

claim provides no basis for reversal.

4. Gobert also argues that the trial court erred when it failed to either grant his motion for mistrial or rebuke the prosecutor in accordance with OCGA § 17-8-75 when the prosecutor, in the presence of the jury, referenced the reasons behind a witness's unavailability to testify. For the reasons explained below, we conclude that, even if the trial court committed error by not rebuking the prosecutor, any such error was harmless. We also conclude that the trial court did not abuse its discretion by not granting a mistrial.

During the defense's closing argument, Gobert's counsel commented on the fact that the State did not call Putnam as a witness. In response, during its closing argument, the State remarked that "Putnam is a defendant in state court. I can't put him up on the stand." Outside the presence of the jury, Gobert's counsel objected to this statement and moved for a mistrial on the ground that the State was arguing matters not in evidence.[4] The State

---

[4] Even though closing arguments were not transcribed, the court reporter recorded Gobert's objection to the prosecutor's remark, the discussion

claimed it was responding to Gobert's argument about the fact that the State had not called Putnam to testify. The trial court noted that the defense had opened the door to the State's argument and that Putnam had invoked his right against self-incrimination. The trial court then denied the motion for mistrial and brought the jury back in to provide an explanation for what occurred. Before the trial court instructed the jury, Gobert's counsel stated that he would object to any instruction and renewed his motion for mistrial. The trial court replied that it would allow Gobert to have a standing objection to what the trial court told the jury. The trial court then instructed the jury that "self-incrimination issues get very tangled" and that if either the State or the defense had called a witness, the witness had the right against self-incrimination, and if the witness chose to assert that right, the jury would not hear testimony from that witness. The trial court also emphasized that what lawyers said during opening and closing remarks is not evidence.

---

of the remark with the court, the subsequent motion for mistrial, and the court's ruling and curative instruction to the jury. Neither party disputes the content of the remarks made during either side's closing argument.

(a) Gobert claims that the trial court erred by failing to rebuke the prosecutor, as required by OCGA § 17-8-75, which provides:

> Where counsel in the hearing of the jury make statements of prejudicial matters which are not in evidence, it is the duty of the court to interpose and prevent the same. On objection made, the court shall also rebuke the counsel and by all needful and proper instructions to the jury endeavor to remove the improper impression from their minds; or, in his discretion, he may order a mistrial if the prosecuting attorney is the offender.

However, even assuming that the trial court erred by failing to rebuke counsel, any such error was harmless. See *Dobbins v. State*, 309 Ga. 163, 168 (3) (844 SE2d 814) (2020) (trial court error under OCGA § 17-8-75 analyzed for harmless error). As discussed above, the evidence of Gobert's guilt was strong, and his justification defenses were weak and unsupported. Moreover, the trial court instructed the jury both before opening statements and after closing arguments that the lawyers' statements were not evidence. See *Dobbins*, 309 Ga. at 168-169 (3) (explaining that even assuming that the trial court erred in not rebuking the prosecutor under OCGA § 17-8-75, any such error was harmless because of the strong evidence

16

against the defendant and the trial court's instructions that closing argument is not evidence); see also *Fleming v. State*, 306 Ga. 240, 243 (2) (830 SE2d 129) (2019) (same). As a result, "it is highly probable that the trial court's alleged error in failing to comply with OCGA § 17-8-75 did not contribute to the verdicts." (Citation and punctuation omitted.) *Dobbins*, 309 Ga. at 169 (3).

(b) Gobert also argues that the trial court abused its discretion by denying his motion for mistrial after the prosecutor's closing argument referred to information not in the record. We disagree.

"It is within the sound discretion of the trial court to grant or deny a motion for mistrial, and such ruling will not be disturbed unless it resulted from a manifest abuse of that discretion." (Citation and punctuation omitted.) *Jordan v. State*, 303 Ga. 709, 713 (4) (814 SE2d 682) (2018). "When determining whether the trial court abused its discretion, [this Court will] consider [the allegedly improper statement], other evidence against the accused, and the actions of the trial court and counsel dealing with the impropriety." (Citation and punctuation omitted.) *Taylor v. State*, 303 Ga. 225, 229

(3) (811 SE2d 286) (2018). And when considering requests for mistrial during closing arguments, "[a] closing argument is to be judged in the context in which it is made." (Citation and punctuation omitted.) *Stephens v. State*, 307 Ga. 731, 737 (3) (838 SE2d 275) (2020).

As discussed above, even though the closing arguments were not transcribed, both parties agree on the general substance of the comments made. As detailed above, the trial court instructed the jury that nothing said by the lawyers during opening and closing remarks is evidence and further explained Putnam's Fifth Amendment privilege against self-incrimation to the jury. Before and after the trial court gave this instruction, Gobert objected that this instruction was not enough to cure the harm done by the prosecutor's statements and moved for a mistrial. Under these circumstances, especially considering the instructions given by the trial court and the strong evidence against Gobert, the trial court did not abuse its discretion by denying Gobert's motion for mistrial. See *Stephens*, 307 Ga. at 737 (3). Accordingly, this enumeration

fails.

*Judgment affirmed. All the Justices concur.*

Decided April 19, 2021.

Murder. Walker Superior Court. Before Judge Van Pelt.

*Karen H. Brouse*, for appellant.

*Christopher A. Arnt, District Attorney, John W. Franklin, Assistant District Attorney; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Elizabeth Rosenwasser, Assistant Attorney General,* for appellee.