**FIRST DIVISION**
**BARNES, P. J.,**
**BROWN and HODGES, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**January 23, 2023**

# In the Court of Appeals of Georgia

A22A1268. HONG v. THE STATE.

HODGES, Judge.

A jury convicted Shenghua Hong of both the rape and aggravated stalking of a woman with whom he previously had a romantic relationship. Hong now appeals, raising several claims of error, including that: (1) the trial court erred in excluding good character evidence from his wife about his non-violent sexual nature; (2) there was insufficient evidence that Hong committed aggravated stalking because the temporary protective order which prevented him from contacting the victim was not properly translated for him; (3) the trial court violated the continuing witness rule; (4) the trial court failed to properly rebuke the prosecutor after she made a comment on the strength of Hong's case during closing argument; and (5) he received ineffective assistance of counsel in that his trial counsel failed to obtain a helpful rebuttal expert

and failed to impeach the victim with evidence of bank fraud. For the reasons that follow, we affirm.

> On appeal of a conviction based on a jury verdict we should examine the evidence in a light most favorable to support that verdict. We resolve all conflicts in favor of the verdict. It is the duty of this court to sustain the verdict if we should find when viewing the evidence in a light most favorable to the verdict that a rational trier of fact could find the defendant guilty beyond a reasonable doubt.

(Citation omitted.) *Chadwick v. State*, 360 Ga. App. 491 (861 SE2d 612) (2021).

So viewed, the evidence shows that Hong and the victim met through an online dating site in China and began dating in 2014. Eventually, the victim moved to the United States and Hong promised to marry her. The couple lived together in Forsyth County for two months in 2016. After moving to the United States, the victim learned that Hong maintained a romantic relationship with a different woman, who was the mother of his child. Ultimately, Hong moved out of the victim's home when he decided to marry the mother of his child instead of the victim. After Hong made his decision, the victim no longer wanted to be romantically involved with him, but Hong continued to contact her. Hong asked the victim if he could come see her, but she declined.

Despite the victim expressing no desire to see Hong, he showed up at an English-language course the victim attended regularly. After the class, the victim went home and made herself lunch. Hong came over to her house uninvited, claiming he was there to pick up some clothes he left behind after moving out. Hong then hugged the victim from behind and attempted to kiss her. He told the victim he loved her, but she told him to leave. Hong then held the victim from the front as she struggled and told him to stop. Hong carried the victim to her bedroom, threw her on her bed, grabbed her hands, and pressed his body on top of her. The victim struggled and cried while Hong took off her clothes. Hong kissed the victim's breasts and forced his penis into her vagina and raped her until he ejaculated. When he finished, Hong told the victim that he did not rape her and he left. During the struggle, a lamp in the victim's bedroom was knocked over, the belt loop of her pants was broken, and her bra was torn.

After Hong left, the victim got dressed and called 911, as well as her neighbor, to report the rape. When the victim spoke to her neighbor she was crying and her voice was shaking. The victim does not speak English, but the police dispatched an officer who is fluent in Mandarin Chinese who took the victim's statement. When the victim spoke to the officer she appeared to have been recently crying and she

3

appeared nervous. The officer and the neighbor observed scratch marks or redness on the victim.

The police officer who spoke Mandarin Chinese accompanied the victim to the hospital, where he translated on behalf of the victim. The victim met with a sexual assault nurse examiner ("SANE nurse"), who performed an examination of the victim. The victim was tearful. The SANE nurse witnessed the following injuries: abrasions on the victim's collarbone, her left arm, and her left breast; bruises on the victim's hip and shoulder; redness to the left side of the opening of the victim's vagina; and an abrasion on the victim's cervix. The SANE nurse testified that the abrasion on the cervix indicates a blunt or pounding type of force, which could happen with rape or rough consensual sex. She stated that she would not expect to see such an injury just because a woman had sexual intercourse. She testified that the redness she saw was indicative of no lubrication, either from a store-bought product or the victim's natural lubrication. She stated that a woman's body produces a natural lubrication when she is interested in sex.

At the hospital, some samples were collected from the victim and tested for DNA. A vaginal cervical swab had DNA from two people — the victim and Hong. A sample from one of her breasts contained DNA from Hong as well as a sample that

4

could not be identified. The sample from the other breast had Hong's DNA as well, but did not contain an unknown DNA sample. The swab from the victim's lip also had Hong's DNA present. The victim's labia swab contained a sample from Hong, and two other DNA profiles that could not be identified due to the nature of the sample obtained.

The same night as the rape, Hong texted the victim, "[Victim], how are you feeling? Do you need me now?" The day following the rape, the victim obtained an ex-parte temporary restraining order against Hong. This TPO prohibited Hong from contacting the victim, including over the phone or via text. The day after the TPO was entered, an officer served Hong with the TPO when Hong was with his wife. This officer did not speak Mandarin Chinese, but he read the contents of the TPO to Hong's wife, who then translated to Hong. Hong's wife communicated well in English with this officer.

Despite being served with the TPO, Hong contacted the victim numerous times.[1] In one text message he said, "The police came to me just now. At least I said goodbye to you before that. Take good care of yourself! Thank you for all that you

---

[1] All of the text messages were sent in Mandarin Chinese and translated for the jury.

have given to me." In another text message he stated, "I will always cherish the wonderful days when we were together. To be with you in this life is my only pursuit." In response to reviewing the contents of the victim's personal statement containing rape allegations that she submitted to obtain the TPO, Hong texted her, "I entered every word and got the whole passage. I can read your love and understanding to me in this transcript. [My] love for you will never change! Thank you my darling!" He also texted her, "[Victim], you are driving me nuts. My contacting you may constitute a crime but I just can't stop contacting you. What can I do?"

Hong was charged with rape and aggravated stalking. He testified in his own defense that the sex between him and the victim was consensual. He admitted having intercourse to the point of ejaculation and that he kissed the victim's lips and breasts. The jury convicted Hong of both charges. The trial court denied Hong's motion for new trial as amended, and Hong now appeals.

1. Hong first alleges that the trial court erred in excluding good character witness testimony from his wife concerning his non-violent sexual nature. We find no reversible error.

"We review a trial court's evidentiary rulings under an abuse of discretion standard of review." (Citation and punctuation omitted.) *Venturino v. State*, 306 Ga. 391, 393 (2) (830 SE2d 110) (2019). As to evidence of a defendant's character, Georgia law relevantly provides that

> (a) In all proceedings in which evidence of character or a trait of character of a person is admissible, proof shall be made by testimony as to reputation or by testimony in the form of an opinion.

> (b) In proceedings in which character or a trait of character of a person is an essential element of a charge, claim, or defense or when an accused testifies to his or her own character, proof may also be made of specific instances of that person's conduct. . . .

OCGA § 24-4-405.

Here, prior to trial of the case, the State filed a motion in limine to prohibit "any character witness testimony regarding how the defendant treats other women or treating other women appropriately for the purposes of proving that he is sexually moral and appropriate." Hong wished to have his wife testify on his behalf that he had never been sexually forceful in the past and that the behavior alleged by the victim "would have been a complete and total aberration." The trial court granted the State's

7

motion, finding that sexual offenses do not happen in public, so other people cannot obtain an accurate opinion of someone's reputation in that regard.

Pretermitting whether this evidence should have been admitted, we find that any error in its exclusion was harmless as it likely would not have affected the result of the trial.

> Erroneous evidentiary rulings are subject to a harmless error test. For a nonconstitutional ruling like the one at issue here, the test for determining harmless error is whether it is highly probable that the error did not contribute to the verdict. In conducting that analysis, we review the record de novo and weigh the evidence as we would expect reasonable jurors to have done.

*Allen v. State*, 310 Ga. 411, 415 (2) (851 SE2d 541) (2020). Here, there was strong evidence of Hong's guilt on the charge of rape, to which his wife's testimony would have pertained. The victim promptly reported the rape, appeared tearful, had visible injuries as well as injuries internally which were consistent with rape, her bedroom was disheveled, and her clothing was torn. Additionally, Hong sent the victim an odd message asking her how she was feeling the night of the rape, which could indicate that he knew the victim had suffered a trauma that day. When confronted with the victim's allegations, instead of texting her to deny them, he texted her that he could

8

tell her love for him in the allegations and that his love for her would never change. "In light of . . . the strong evidence of [Hong's] guilt, the exclusion of [his wife's] testimony was harmless error, if error at all, as it was highly probable that the exclusion of this evidence did not contribute to the jury's verdict." (Citations and punctuation omitted.) *Keller v. State*, 308 Ga. 492, 503 (5) (842 SE2d 22) (2020).

2. Hong next contends that the evidence was insufficient to establish the crime of aggravated stalking because the State failed to prove he was on notice of the prohibition on contacting the victim. We disagree.

Georgia law is clear that

> [w]hen we consider the legal sufficiency of the evidence, we must put aside any questions about conflicting evidence, the credibility of witnesses, or the weight of the evidence, leaving the resolution of such things to the discretion of the trier of fact. Instead, we must view the evidence in the light most favorable to the verdict, and we inquire only whether any rational trier of fact might find beyond a reasonable doubt from that evidence that the defendant is guilty of the crimes of which he was convicted.

*Walker v. State*, 296 Ga. 161, 163 (1) (766 SE2d 28) (2014).

> Under OCGA § 16-5-90 (a) (1), "a person commits the offense of stalking when he or she follows, places under surveillance, or contacts another person at or about a place or places without the consent of the

9

other person for the purpose of harassing and intimidating the other person." Under OCGA § 16-5-91 (a), a person commits the offense of aggravated stalking when, in violation of certain types of court orders that "in effect prohibit [ ] the behavior described in this subsection," [he] "follows, places under surveillance, or contacts another person at or about a place or places without the consent of the other person for the purpose of harassing and intimidating the other person."

(Punctuation omitted.) *State v. Carlisle*, 280 Ga. 770, 771 (1) (631 SE2d 347) (2006).[2]

Here, it is undisputed that a TPO had been entered which prohibited Hong from contacting the victim. Hong, however, contends that he only understood the TPO to prohibit him from going to the victim's house. Hong does not speak English, and the officer who served him with the TPO did not speak Mandarin Chinese. Hong's wife was present at the time the TPO was served and the officer testified that she spoke English well with him and that she translated the TPO to Hong. At trial, Hong's wife testified through an interpreter and disputed this claim, stating that she does not speak English very well and that she only told Hong to stay away from the victim's home

[2] Hong only argues that the evidence is insufficient due to a language barrier preventing him from understanding the restrictions in the TPO. He does not argue insufficiency with regard to any other element of the crime.

and did not tell him that he could not text the victim. Despite Hong's claim that he did not understand that he was prohibited from texting the victim, in one of his messages to her after being served with the TPO, he acknowledged that his "contacting [her] may constitute a crime," but claimed he could not stop himself. "The jury determines the credibility of witnesses[.]" *Rucker v. State*, 272 Ga. 750, 752 (2) (534 SE2d 71) (2000). The jury was authorized to credit the testimony of the police officer, bolstered by Hong's acknowledgment that contacting the victim could be a criminal act, over the testimony of Hong and his wife. Accordingly, even assuming that the State was required to prove that Hong understood the contents of the TPO, there was sufficient evidence that Hong was aware that he was prohibited from contacting the victim in any manner.[3]

3. Hong argues that the trial court violated the continuing witness rule by sending a statement of the victim back with the jury. We find no reversible error.

Hong argues that the continuing witness rule was violated when a statement from the victim, submitted in support of her petition for a TPO, went back with the jury for deliberations. Hong took a picture of the statement, which outlined the

[3] It may, nonetheless, be a better practice to limit translation of legal documents of such importance to bilingual law enforcement officers or disinterested third parties.

victim's allegation of rape, and attached it to a text he sent to the victim along with the message: "I entered every word and got the whole passage. I can read your love and understanding to me in this transcript. [My] love for you will never change! Thank you my darling."

> In Georgia, the continuing witness objection is based on the notion that written testimony is heard by the jury when read from the witness stand just as oral testimony is heard when given from the witness stand. But, it is unfair and places undue emphasis on written testimony for the writing to go out with the jury to be read again during deliberations, while oral testimony is received but once. The types of documents that have been held subject to the rule include affidavits, depositions, written confessions, statements, and dying declarations.

(Citation omitted.) *Woodruff v. State*, 356 Ga. App. 659, 663 (2) (848 SE2d 670) (2020). The State alleges the victim's statement was original evidence in support of Hong's aggravated stalking charge.[4] Pretermitting whether the State's characterization of the document is accurate, we find no reversible error. "[A] judgment need not be reversed unless the error is harmful. Since the evidence

---

[4] "[I]t is well established that the continuing witness rule is inapplicable where the document at issue is original documentary evidence or where the document is non-testimonial in nature because it was not a reduction of or substitute for a person's oral statements or testimony." (Citation and punctuation omitted.) *Pattarozzi v. State*, 358 Ga. App. 675, 679 (856 SE2d 51) (2021).

12

contained in the statement was also brought out during the trial and the evidence of guilt was overwhelming, there was no harm." *Kent v. State*, 245 Ga. App. 531, 533 (3) (538 SE2d 185) (2000). Moreover, the victim was extensively cross-examined about her allegation of rape. See id. As discussed above, the evidence against Hong was overwhelming. Accordingly "it is highly probable that the jury's view of this exhibit did not contribute to the verdict." Id.

4. Hong contends the trial court erred by failing to rebuke the prosecutor or grant a mistrial due to the prosecutor's improper comment regarding the strength of Hong's case. We find no reversible error.

Georgia law provides that

> [w]here counsel in the hearing of the jury make statements of prejudicial matters which are not in evidence, it is the duty of the court to interpose and prevent the same. On objection made, the court shall also rebuke the counsel and by all needful and proper instructions to the jury endeavor to remove the improper impression from their minds; or, in his discretion, he may order a mistrial if the prosecuting attorney is the offender.

OCGA § 17-8-75.

During closing arguments, Hong's counsel made remarks, either directly or indirectly, about the prosecutor to which she took offense.[5] In response to these comments, the prosecutor said, "And I'd ask that we [refrain] from attacking the prosecutor personally, and talk about the facts of the case. I realize that if you don't have a strong case, maybe that is what you want to do. But I would ask that he refrain." In response to the comment about the strength of Hong's defense, his counsel moved for a mistrial, which the trial court denied. Hong's counsel did not ask for any curative instructions about the prosecutor's comment, but the trial court stated on its own that it would not be providing any. Prior to opening statements and following closing arguments, the trial court charged the jury that the remarks of the attorneys are not evidence.

As for Hong's motion for a mistrial,

> [i]t is within the sound discretion of the trial court to grant or deny a motion for mistrial, and such ruling will not be disturbed unless it resulted from a manifest abuse of that discretion. When determining whether the trial court abused its discretion, this Court will consider the

---

[5] For example, defense counsel stated, "I do not want to stand here and give you a dramatic reading of a Power Point performance[,]" which presumably was a comment on the manner in which the prosecutor presented her closing argument. He also said that the prosecutor "stands before you, highly indignant. God knows she's indignant, isn't she?"

allegedly improper statement, other evidence against the accused, and the actions of the trial court and counsel dealing with the impropriety. And when considering requests for mistrial during closing arguments, a closing argument is to be judged in the context in which it is made.

(Citations and punctuation omitted.) *Gobert v. State*, 311 Ga. 305, 312-313 (4) (b) (857 SE2d 647) (2021). We find no manifest abuse of discretion here. The prosecutor's comment was a single sentence interposed as an objection following defense counsel's remarks concerning the tactics and demeanor of the prosecutor.

With regard to the trial court's sua sponte refusal to rebuke the prosecutor in front of the jury,

even assuming that the trial court erred by failing to rebuke counsel, any such error was harmless. As discussed above, the evidence of [Hong's] guilt was strong . . . . Moreover, the trial court instructed the jury both before opening statements and after closing arguments that the lawyers' statements were not evidence. As a result, it is highly probable that the trial court's alleged error in failing to comply with OCGA § 17-8-75 did not contribute to the verdicts.

(Citations and punctuation omitted.) *Gobert*, 311 Ga. at 312 (4) (a).

5. Lastly, Hong argues he received ineffective assistance of counsel in two regards. We disagree.

Under Georgia law,

[t]o prevail on a claim of ineffective assistance of counsel, a defendant must show that counsel's performance was deficient and that the deficient performance so prejudiced the defendant that there is a reasonable likelihood that, but for counsel's errors, the outcome of the trial would have been different. *Strickland v. Washington*, 466 U. S. 668, 687 (III) (104 SCt 2052, 80 LEd2d 674) (1984). If an appellant fails to meet his or her burden of proving either prong of the *Strickland* test, the reviewing court does not have to examine the other prong. In reviewing the trial court's decision, we accept the trial court's factual findings and credibility determinations unless clearly erroneous, but we independently apply the legal principles to the facts. Furthermore, there is a strong presumption that the performance of counsel was within the wide range of reasonable professional lawyering, and we cannot reach a contrary conclusion unless defendant successfully rebuts the presumption by clear and convincing evidence. Judicial scrutiny of counsel's performance must be highly deferential. The test has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted. In determining what constitutes ineffective assistance, a critical distinction is made between inadequate preparation and unwise choices of trial tactics and strategy. Particularly in regard to matters of trial strategy and tactic, effectiveness is not judged by hindsight or result. Indeed, decisions regarding trial tactics and strategy may form the basis for an ineffectiveness claim only if they were so

16

patently unreasonable that no competent attorney would have followed such a course.

(Citations and punctuation omitted.) *Walker v. State*, 349 Ga. App. 188, 192-193 (4) (825 SE2d 578) (2019).

### a. Rebuttal Expert Witness

Hong contends that his counsel was ineffective for failing to obtain an expert witness to rebut the SANE nurse's testimony concerning the victim's injuries being consistent with rape. At the motion for new trial hearing, Hong proffered the testimony of Dr. Matthew Seibel, a hospital-based pediatrician. Dr. Seibel testified that he examines victims of sexual assault who are children and teenagers. He testified that there is not much of an anatomical difference between an older teen and a young adult, but that he did not have much experience with more mature women and acknowledged that the genitals of women in their 40s could be different as a result of hormonal changes. Dr. Seibel did not know that the victim was in her 40s and he admitted that he had never performed an exam on a woman older than 20 or 21.

The trial court found Dr. Seibel unqualified to testify in this case, but it allowed Dr. Seibel to proffer the testimony he sought to provide. Dr. Seibel testified that the

17

SANE nurse's testimony that the victim's body would have provided natural lubrication if she was interested in consensual sex was medically inaccurate. He testified that natural lubrication has nothing to do with whether sex was consensual or forced. Accordingly, he testified it was medically inaccurate to expect less redness of the genitals with consensual sex due to natural lubrication. He also testified that blunt force trauma to the cervix can happen with either consensual or forced sex.

When questioned as to why he did not retain a rebuttal expert, one of Hong's trial attorneys testified that he did not consider the victim's injuries to be significant, that in his decades of experience he did not believe the jury gives injuries such as the victim's much weight, and that he thought the less said about the injuries the better.[6]

Hong contends both that his trial counsel was ineffective for failing to retain a rebuttal expert witness to testify as Dr. Seibel would and that the trial court erred in excluding Dr. Seibel's testimony. Even assuming that it was unreasonable for trial counsel not to retain a rebuttal expert such as Dr. Seibel, and even assuming the trial court should have considered Dr. Seibel's testimony – both points which are doubtful at best – we find that Hong experienced no prejudice. The crux of the testimony at

---

[6] Hong was represented by a second attorney at trial who spoke Mandarin Chinese and communicated directly with Hong. This attorney was not called to testify at the motion for new trial hearing.

18

issue is that the victim's injuries are inconclusive for establishing rape because they also could have been sustained through rough consensual sex. This is a point which was conceded by the SANE nurse during her testimony. "Dr. [Seibel's] testimony would have been cumulative, and the failure to call an expert witness whose testimony was cumulative cannot establish the prejudice prong of an ineffective assistance of counsel claim." *Hambrick v. State*, 353 Ga. App. 666, 673 (2) (a) (839 SE2d 664) (2020).

### b. Victim's Bank Fraud

Hong contends that his trial counsel was ineffective for failing to cross-examine the victim about committing bank fraud. At the motion for new trial hearing, Hong testified that he was aware that the victim forged documents to banks to obtain money from the banks, and that the two had fought about the fraud, which led to the end of the relationship. No other evidence was presented to support this allegation of fraud by Hong. When asked about this, one of Hong's two trial attorneys responded that he did not recall whether he knew of Hong's fraud accusations against the victim. Hong testified that he told the other trial lawyer about the fraud allegation as well as a different attorney who represented Hong prior to trial. These other attorneys did not

testify and Hong did not claim to have told the testifying trial attorney about the fraud allegation.

Hong contends that his fraud allegations against the victim would have been admissible pursuant to OCGA § 24-6-608 (b), which provides that:

> Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness's character for truthfulness, other than a conviction of a crime as provided in Code Section 24-6-609, or conduct indicative of the witness's bias toward a party may not be proved by extrinsic evidence. Such instances may however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness:
>
> (1) Concerning the witness's character for truthfulness or untruthfulness; or
>
> (2) Concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified.

Hong does not contend that the victim was actually convicted of bank fraud, and he does not argue that he should have been able to prove that she committed bank fraud with extrinsic evidence. Accordingly, his allegation is that his trial counsel was ineffective for failing to cross-examine the victim about whether she committed bank

20

fraud, even though his counsel would then be limited to whatever answer the victim gave to the question. Hong testified he told two of his attorneys of his fraud accusations. Even accepting this testimony as true, "where, as here, trial counsel does not testify at the motion for new trial hearing, it is extremely difficult to overcome the presumption that counsel's conduct resulted from reasonable trial strategy." (Citation and punctuation omitted.) *Lopez v. State*, 310 Ga. 529, 533 (3) (a) (852 SE2d 547) (2020). There is certainly reasonable trial strategy in declining to cross-examine a rape victim about an unsubstantiated claim of bank fraud which the victim could simply deny.

As for the trial counsel who did testify, that attorney did not recall whether he was informed about the fraud allegation, which Hong never claimed to have shared with that attorney. The record is simply devoid of evidence of this attorney having knowledge of the accusation. "A client cannot simply withhold relevant information within his knowledge, of which his attorney would have no reason to be aware, and then claim that the attorney was ineffective for failing to discover such information on his own."[7] (Citation and punctuation omitted.) *Sutton v. State*, 261 Ga. App. 860,

---

[7] We decline Hong's invitation to remand this case for a specific finding by the trial court that it credits the attorney's testimony. There was no conflicting evidence before the trial court to weigh. Indeed, the evidence consisted of testifying counsel's

863 (2) (a) (583 SE2d 897) (2003). Accordingly, Hong has failed to meet his burden to prove that any of his attorneys were ineffective.

*Judgment affirmed. Barnes, P. J., and Brown, J., concur.*

---

lack of memory about the topic and Hong's testimony that he informed lawyers other than the one who testified. This does not present a circumstance which necessitates a remand.